Neil JOHN, Petitioner,

v.

STATE of North Dakota and J. Dwight
Woodley, Warden of the State Peni-
tentiary, Respondents.

Cr. No. 363.

Supreme Court of North Dakota.

April 25, 1968.

Opinion on Amended Motion July 22, 1968.

Thompson, Lundberg & Nodland, Bismarck, for petitioner.

Helgi Johanneson, Atty. Gen., and John E. Adams, Asst. Atty. Gen., Bismarck, for respondents.

PAULSON, Judge.

Neil David John has petitioned this court for a writ of habeas corpus. His prior petition in the Burleigh County District Court, Honorable M. C. Fredricks, Judge, was quashed on December 20, 1967.

On September 23, 1965, John pleaded guilty to the crime of burglary in Grand Forks County District Court and was given an indeterminate sentence of from one to three years by Judge Harold Hager. He ·commenced serving this sentence in the North Dakota State Penitentiary and was released upon parole on May 24, 1966. On June 10, 1966, the petitioner was charged with burglary of a potato warehouse, and ·was separately charged with cashing several checks acquired in that burglary. Before resolution of these charges, petitioner pleaded guilty to taking an automobile ·without the owner's consent (this occur-

ring in July 1966), and was sentenced to 150 days in the county jail in Grand Forks County.

After serving 80 days of his 150-day car-theft sentence, the petitioner was taken from the jail to appear before Judge Hager on the potato warehouse burglary charge, to which he pleaded guilty. There, on October 3, 1966, he received the following sentence:

"* * * the sentence of the Court is that you, Neil John, be imprisoned in the Penitentiary at Bismarck, in said State for the Indeterminate Term of Three (3) to Five (5) years pursuant to Section 12–06–07 of the Century Code of the State of North Dakota. This sentence shall be suspended on the condition that you be admitted to the State Hospital at Jamestown, North Dakota for medical treatment and that you stay there until the Superintendent of said institution is of the opinion that you are ready to take your place in society. If, on your release, the Superintendent feels that you need additional out patient treatment you are to get this from the Mental Health Center of Grand Forks, North Dakota.

"Upon your being released from the State Hospital you will report to the State Parole Officer in the Grand Forks area immediately and be supervised by him and you will abide by the rules of probation adopted by the North Dakota Parole Board.

"On any violation of these conditions or on any of the rules of probation this suspension of sentence will be revoked and you will be sent to the Penitentiary at Bismarck, North Dakota to serve out your sentence. * * *"

The sentencing judge then signed a transport order which directed the sheriff to take Mr. John directly to the State Hospital at Jamestown. None of the above events resulted in a revocation of the parole granted under the sentence and judgment of September 23, 1965.

The petitioner remained in the State Hospital at Jamestown until April 1, 1967, when he and another inmate obtained some liquor and became intoxicated. While in the intoxicated state, Mr. John and his fellow inmate walked away from the State Hospital and into downtown Jamestown, where they purchased a further supply of liquor. They then commandeered a car from the streets of Jamestown and drove to Minneapolis, Minnesota. Petitioner voluntarily returned to the State Hospital on May 11, 1967.

On this latter date, officials at the State Hospital contacted Mr. Irvin M. Riedman, the North Dakota Parole Board's executive secretary, and informed him of the presence of Mr. John at the Hospital. Six days later Mr. John was arrested by the representatives of the State Parole Board and was returned to the State Penitentiary at Bismarck.

On June 1, 1967, petitioner appeared before the Parole Board and was declared a parole violator under the sentence of September 23, 1965, and a probation violator under the sentence of October 3, 1966, and the Board ruled that petitioner was to be imprisoned, both sentences to run concurrently. The sentence of September 23, 1965, has since expired.

Petitioner claims numerous violations of law have occurred which entitled him to be released by writ of habeas corpus. These violations are:

(1) That the authority exercised by the State Parole Board in recommitting petitioner was an unconstitutional act, because the statutes under which the Parole Board acts comprise an unconstitutional delegation of judicial authority in violation of Section 103 of the North Dakota Constitution; (2) that the Parole Board had no jurisdiction to revoke the probation under the sentence of October 3, 1966, since said sentence was, as a matter of practical fact, a deferred imposition of sentence and therefore only the trial judge who had

heard the case could revoke petitioner's probation; (3) that petitioner was denied due process of law in that he was not represented by counsel, not advised of his right to be represented by counsel, not advised of his right to have counsel appointed, not presented with a written notice of the hearing of the charges against him, not provided with an opportunity to confront his accusers, not given an opportunity to subpoena witnesses in his behalf or advised of his right to do so, and not provided with a transcript of the proceedings at the parole and probation revocation hearing of June 1, 1967; and (4) that petitioner was denied equal protection of the law.

We will consider these alleged illegalities in the order above stated. Section 103 of the North Dakota Constitution states:

"The district courts shall have original jurisdiction, except as otherwise provided in this constitution, of all causes both at law and equity, and such appellate jurisdiction as may be conferred by law. They and the judges thereof shall also have jurisdiction and power to issue writs of habeas corpus, quo warranto, certiorari, injunction and other original and remedial writs, with authority to hear and determine the same."

Petitioner contends that the exercise of authority by the Parole Board is in derogation of the "original jurisdiction" of the district court, as set forth in the above section of the North Dakota Constitution. Jurisdiction is the power to hear and determine a cause. State ex rel. Johnson v. Broderick, 75 N.D. 340, 27 N.W.2d 849. When the case has been tried, judgment of conviction has been rendered, and sentence has been pronounced, the court loses its jurisdiction. However, where imposition of sentence is deferred under Section 12–53–13, N.D.C.C., the court retains jurisdiction. Thus, vesting control and custody of a parolee or probationer in the State Parole Board is not in derogation of the "original jurisdiction" of the district courts in this State.

Under the sentence imposed on September 23, 1965, there is no question that the Parole Board had the power, under the statutes, to revoke the parole granted to petitioner on May 24, 1966, following a hearing at which petitioner was present. However, the revocation of the probation granted to the petitioner following the guilty plea to the burglary charge on October 3, 1966, presents a more difficult question. Section 12–53–06 of the North Dakota Century Code provides:

"When a defendant has been found guilty of a felony for which the sentence may be suspended under this chapter, if the facts set forth in section 12–53–01 appear and the court shall suspend the sentence, the order suspending such sentence shall provide that the defendant shall be placed on probation. The effect of the order suspending the sentence and placing the defendant on probation shall be to place said defendant under the control and management of the parole board, and he shall be subject to the same rules and regulations as apply to persons paroled from the penitentiary after a period of imprisonment therein."

Section 12–53–11, N.D.C.C., provides that the Parole Board may revoke the suspension of sentence granted under Section 12–53–06, N.D.C.C., and may "cause said person to suffer the penalty of the sentence previously imposed upon him, if the board shall determine at such hearing that the probationer has violated any of the rules and regulations prescribed for the conduct of probationers".

Section 12–53–13, N.D.C.C., provides for suspended imposition of sentence as follows:

"When a defendant has been found guilty of a crime, whether or not for the first time, the court having jurisdiction thereof, including a county justice, upon application or its own motion may, in its discretion, suspend the imposing of the sentence and may direct that such suspension continue for a definite period of

time, upon such terms and conditions as it may determine. Such period shall not exceed five years, except that in cases where the defendant has been found guilty of abandonment or nonsupport of his wife or children, the period may be continued for as long as responsibility for support continues."

Section 12–53–15, N.D.C.C., provides the method by which probation granted under the suspended imposition of sentence statute may be revoked:

"Whenever the parole board, the court, or the state's attorney, shall have reason to believe such defendant is violating the terms of his probation, such probationer shall be brought before the court wherein the probation was granted for a hearing upon the alleged violation. For this purpose any peace officer or state parole officer may re-arrest the probationer without warrant or other process. Costs incurred in bringing the probationer before the court shall be borne by the county wherein the probation was granted. The court may thereupon, in its discretion, without notice revoke and terminate such probation, pronounce judgment, and deliver defendant to the sheriff to be transferred to the penitentiary or other state institution in accordance with the sentence imposed."

Consideration of the above statutes indicates that where sentence is pronounced and then suspended under Section 12–53–06, N.D.C.C., the trial court loses jurisdiction of the defendant, and, thereafter, the only authority to revoke the probation is in the Parole Board. On the other hand, if imposition of sentence is deferred under Section 12–53–13, N.D.C.C., there has, in effect, been no sentence passed, and the trial court retains jurisdiction of the defendant for the purpose of passing sentence at some future date, should it become necessary. When imposition of the sentence is deferred, the defendant is placed on probation and becomes subject to the orders and regulations of the Parole Board

and such terms and conditions as may be imposed by the court; provided, however, that any hearing for revocation of this probation must, by the statute, be before the trial court which heard the defendant's case.

 Petitioner contends that the "sentence" imposed by Judge Hager on October 3, 1966, was, in reality, a deferred imposition of sentence, and, therefore, that any hearing at which it was attempted to revoke petitioner's probation under this sentence had to be held before Judge Hager. We do not agree with this contention. The trial court stated:

"* * * the sentence of the Court is that you, Neil John, be imprisoned in the Penitentiary at Bismarck, in said State for the Indeterminate Term of Three (3) to Five (5) years pursuant to Section 12–06–07 of the Century Code of the State of North Dakota. This sentence shall be suspended on the condition that you be admitted to the State Hospital at Jamestown, North Dakota for medical treatment. * * *"

There can be no argument but that the trial judge "sentenced" the defendant. The language is plain and unambiguous. Section 12–53–06, N.D.C.C., provides that the trial judge in the order suspending sentence shall provide that the defendant be placed on probation, and that the effect of the order placing the defendant on probation, shall be to place him in the custody and control of the Parole Board and subject to their rules and regulations. The trial court then inserted a condition (that petitioner be admitted to the State Hospital at Jamestown) which did not comport with the terms of the statute and which is, in effect, surplusage. The answer to petitioner's contention, as set out above, is that the sentence of October 3, 1966, was a suspended sentence, and therefore the Parole Board was the only body with authority to revoke petitioner's probation.

 The next contention of the petitioner is primarily concerned with his lack of counsel at the revocation hearing of June 1, 1967. The Parole Board's minutes for June 1, 1967, do not indicate that the petitioner was advised of a right to counsel, or of the right to appointed counsel, and do not indicate a waiver of any right on the part of petitioner. Since a presumption of waiver of constitutional rights from a silent record is impermissible (Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70), it must be conceded that if defendant is entitled to appointed counsel as a matter of constitutional right, such right has been denied him. The petitioner, in arguing that he is entitled to such right, relied chiefly on the case of Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

In that case, the defendant, a minor, was charged with "joyriding". Upon his arraignment he pleaded guilty after being advised by court-appointed counsel and was placed on probation with imposition of sentence deferred. Approximately two months later the probation and parole authorities applied to have his probation status revoked for violation of the terms of the probation. At a revocation hearing before the court, the defendant, without counsel, was found to have violated the terms of his probation. Probation was revoked and the defendant was sentenced to the maximum term, as was provided by Washington State law. The revocation procedure was affirmed by the Supreme Court of Washington in Mempa v. Rhay, 68 Wash.2d 882, 416 P.2d 104 (1966). On certiorari, the Supreme Court of the United States reversed, holding that, when sentence is pronounced after a period of deferred imposition, a "critical" stage of a criminal proceeding has been reached and, therefore, petitioner was entitled to counsel at that point under the principles announced in Gideon v. Wainwright, (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

Mempa v. Rhay, supra, is clearly distinguishable from the case at bar. In the present case, sentencing had been completed, the criminal proceeding had ended, and

petitioner had been accorded conditional liberty by legislative grace.

The right to counsel clause of Section 13 of the North Dakota Constitution refers to "criminal prosecution" and states that in such prosecution the party accused shall have the right to "appeal and defend in person and with counsel". A probation or parole revocation hearing (except where sentencing has been deferred) is not encompassed by the phrase "criminal prosecution", and, therefore, the constitutional right to counsel under Section 13 does not apply.

The right to counsel embodied in the Sixth Amendment to the United States Constitution has been imposed upon the States through the due process clause of the Fourteenth Amendment. Some of the United States Supreme Court decisions have held that in noncapital felony cases the defendants were entitled to court-appointed counsel at various stages in the proceedings against the defendants. Gideon v. Wainwright, supra; Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Mempa v. Rhay, supra; Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). However, the Sixth Amendment right to counsel, when the sentence has been imposed, has not yet been applied to parole or probation revocation hearings.

If defendant was not entitled to counsel under the right to counsel clauses of either the Federal or State Constitutions, was he entitled to counsel under the due process clauses of either Constitution? Due process of law is that process which secures the individual from the arbitrary exercise of the powers of government. State v. Cromwell, 72 N.D. 565, 9 N.W.2d 914 (1943). Due process of law in the context of a criminal proceeding is bound up in the protections set forth in the Federal Bill of Rights and applied to the States through the due process clause of the Fourteenth Amendment. Due process in parole or probation revocation hearings rests in the language of the statutes creating that privilege or providing for its revocation. See Brown v. Warden, United States Penitentiary, 351 F.2d 564 (7th Cir. 1965), cert. denied, 382 U.S. 1028, 86 S.Ct. 651, 15 L.Ed.2d 541 (1966); Harris v. Langlois, 202 A.2d 288 (R.I.1964), cert. denied, 379 U.S. 866, 85 S.Ct. 138, 13 L.Ed.2d 70; Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935); Sellers v. State, 107 Ga.App. 516, 130 S.E.2d 790 (1963); Robinson v. Cox, 77 N.M. 55, 419 P.2d 253 (1966); Application of Jerrel, 77 S.D. 487, 93 N.W.2d 614 (1958); 21 Am. Jur.2d Criminal Law §§ 567, 568. The statute dealing with breach of parole from the Penitentiary provides as follows:

"Any person shall be deemed to be in the custody and under the control of the board while on parole, and shall be subject, at any time until the expiration of the term for which he was sentenced, to be taken into actual custody and returned to the penitentiary. The board shall enforce the rules and regulations made by it for the paroling of persons committed to the penitentiary. When it shall appear to the board after a full hearing that a person out on parole has violated any of such rules or regulations, it may order that such person be taken into actual custody and recommitted to and confined in the penitentiary as provided in his sentence. The board shall enter any such order in the record of its proceedings. A copy of the order certified by the clerk of the board may be delivered to any sheriff or other peace officer of the state for service and return, and it shall be the duty of any such officer to receive the same, to apprehend and immediately to return any person named in the order, and to deliver him to the warden of the penitentiary. The warden shall receive and reimprison such person in accordance with the terms of his original sentence." [Sec. 12-59-15, N.D.C.C.]

This particular statute encompasses three different provisions with reference to the procedures to be employed by the Parole Board. The first portion of the statute states that the parolee is in the custody and under the control of the Board during the entire time that he is on parole and until the expiration of the term of his sentence and that the parolee may be taken into actual custody and returned to the Penitentiary, without notice, at any time during the period of time that such sentence is in force. Secondly, the statute provides that the Parole Board, after a full hearing, may revoke the parole of such parolee, and this statute contemplates a hearing at which the parolee is not even present. A further provision of this statute empowers the Board to issue an order to reimprison such parolee after the Board at a full hearing has determined that the parolee had violated the terms and conditions of his parole. The petitioner in the instant case was in custody prior to the parole revocation hearing. The procedure in North Dakota is similar to the procedure used in the State of Oregon. Ex parte Anderson, 191 Ore. 409, 229 P.2d 633, 230 P.2d 770, 29 A.L.R.2d 1051. The Oregon court held that revocation without notice and hearing of a parole under a statute providing that a paroled prisoner is at all times during the continuance of his parole in the legal custody of the state parole board, and which statute contains no express provision for notice and hearing, did not violate the due process clauses of either the State or Federal Constitution. Our statute is similar in this respect. It states that after a full hearing a person out on parole may be taken into custody and recommitted. The statutory language does not require his presence nor that notice be given to him.

The Oregon court further stated in the *Anderson* case that a parole may be revoked at the discretion of the parole board on the basis of its own investigation before arrest, or it may act after the director has initiated proceedings by arresting the prisoner, and in neither case is the board required to accord a hearing. However, the petitioner in the case at bar had, as shown by the record, a personal hearing before the Parole Board, which was more than was required by the statute. A full hearing is the "due process" to which the petitioner is entitled by virtue of our statute. See Ex parte Anderson, supra; Brown v. Warden, U. S. Penitentiary, et seq., supra.

The statute, that is, Section 12–59–15, N.D.C.C., by its own terms, provides against arbitrariness. The parolee's privilege is granted as a matter of legislative grace. See Curtis v. Bennett, 351 F.2d 931 (8th Cir.1965); Jones v. Rivers, 338 F.2d 862, 874 (4th Cir.1964); Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 236 (1963), cert. denied, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315; Willard v. Ferguson, 358 S.W.2d 516 (Ct.App.Ky. 1962); Hendrickson v. Pennsylvania State Board of Parole, 409 Pa. 204, 185 A.2d 581, cert. denied, 374 U.S. 817, 83 S.Ct. 1713, 10 L.Ed.2d 1041; 24 C.J.S. Criminal Law § 1571(2). Therefore, the Legislature can set the standards upon which such privilege shall be denied or taken away. Our statute provides that this may be done without notice and without the presence of the parolee.

A review of the record reveals that the Parole Board held a full hearing as defined by the statute. Thus we hold that the petitioner was accorded the due process to which he is entitled by reason of this statute.

Section 12–53–11, N.D.C.C., sets forth the due process to be extended in the matter of hearings for the termination of the probation and the revocation of the suspended sentence, as follows:

"The parole board, after a full investigation and a personal hearing, may revoke the suspension of the sentence of a person convicted of a felony and placed on probation and may terminate the pro-

bation and cause said person to suffer the penalty of the sentence previously imposed upon him, if the board shall determine at such hearing that the probationer has violated any of the rules and regulations prescribed for the conduct of probationers. * * *"

The foregoing statute contemplates and sets forth that the probationer has a right to a personal hearing before revocation of probation. The statute, however, does not provide for notice of hearing to be given to the probationer, nor does it provide that he be furnished with counsel. The record shows that the petitioner was afforded a personal hearing as provided by the statute. Likewise, this statute, by its terms sets forth the provisions whereby the probationer is not arbitrarily and summarily reimprisoned, for the reason that such statute states that:

"The parole board, after a full investigation and a personal hearing, may revoke the suspension of the sentence * * *."

Again, the probationer is granted conditional liberty as a matter of legislative grace. Thus the petitioner secured all of the rights to which he was entitled under the statute. See Curtis v. Bennett, et seq., supra. Again, the Legislature sets the standards whereby the probation privilege may be removed. There is no showing on the part of the petitioner that he was not afforded all of the rights as set forth by the statute. Thus we hold that the petitioner was accorded the "due process" to which he is entitled by reason of this statute. This holding answers the petitioner's other contentions regarding alleged violations of his due process rights. See Hyser v. Reed, supra. Therefore, the petitioner is not entitled to relief under due process on his application for a writ of habeas corpus.

Although Sections 12–59–15 and 12–53–11, N.D.C.C., do not provide that the prisoner shall be advised of his right to counsel, the rules and regulations of the Parole Board make such provision. Section 4 reads as follows:

"4. The prisoner is to be advised that he has the right to be represented by an attorney."

Section 6 reads as follows:

"6. In those cases where the alleged violator is not represented by an attorney, he is to be duly cautioned as to his rights and that his pleas of guilty to the charges could cause his return to prison for the remainder of his sentence."

In addition, Sections 2, 3, and 5 provide as follows:

"2. Such person shall be given notice of the claims as to how it is said he violated his parole or probation as soon as it is reasonably possible after he has been placed in the Penitentiary.

"3. The prisoner shall be given notice of the date of hearing and the place where it is to be held at least ten days before the hearing unless the prisoner waives such notice.

"5. The prisoner will be permitted the right to have witnesses to give testimony or evidence in his behalf at the hearing."

The petitioner alleges that he was not provided with written notice of the hearing or of the charges against him; that he was not granted an opportunity to confront his accusers; that he was not permitted the right to subpoena witnesses in his behalf; and that he was not furnished with a transcript of the proceedings. With respect to his contentions regarding the right of confrontation and the right to a transcript, the Parole Board's rules and regulations do not make provision for the same. The rules and regulations do provide for written notice of the hearing and the charges against the prisoner, as well as a right to have witnesses at the hearing. Rule 5 is permissive only, although the Parole Board has the authority under the statute to issue process. Sec. 12–59–06, N.

D.C.C. Pursuant to this statute, the Board is empowered to compel witnesses to testify at the hearings but is not required to do so. A review of the language of the statute shows that such language is clearly not mandatory. In any event, the record does not adequately reveal that the above rules were complied with at the June 1, 1967, parole and probation revocation hearing. We believe that where rules have been propounded by the State Parole Board they should be followed. Although we do not grant the petitioner the relief prayed for, we condition its denial upon the petitioner's receiving a new probation revocation hearing within sixty days from the date of the filing of this opinion. Sec. 27–02–05, N.D.C.C. The sentence imposed on the petitioner under date of September 23, 1965, has expired. The statutes and Section 4 of the rules and regulations of the State Parole Board, together with the other rules and regulations, should be fully complied with and a proper and sufficient record made.

■ Petitioner's guarantee of equal protection of the laws has not been violated in this case. The State law as set out in the statutes dealing with parole and probation revocation has not been shown to have been applied differently in this case than in any other. As has been previously pointed out, there is no constitutional right to counsel at a probation or parole revocation hearing (unless the probation revocation hearing arises under a deferred imposition of sentence); therefore, petitioner has no right which he can waive. Further, there has been no showing made by the petitioner in this case that other probationers or parolees have been granted the right to retained counsel at a revocation hearing, and, accordingly, the petitioner has failed to sustain the burden of proof. 25 Am. Jur., Habeas Corpus § 150, p. 247. Therefore, there has been no violation of Article I, section 20, of the North Dakota Constitution. State v. Gamble Skogmo, Inc., 144 N.W.2d 749 (N.D.); State for Benefit of Workmen's Compensation Fund v. E. W.

Wylie Co., 79 N.D. 471, 58 N.W.2d 76 (1953). We hold there has been no showing of a denial of equal protection of the laws.

Petitioner further contends that the acts complained of constituting violation of parole were acts committed during the time when he was mentally ill, intoxicated, or absent without leave from a mental institution. He further urges that by virtue thereof the Parole Board's act in declaring him in violation of parole was not justified. These contentions are without merit because the record made by the petitioner failed to show that he was mentally ill at the time that he committed the acts constituting the violation of his parole.

■ Finally, petitioner claims that his incarceration in the State Penitentiary constitutes cruel and unusual punishment because of the fact that he is mentally ill. Although this contention is without merit, we point out that there is a procedure provided by Section 12–47–27, N.D.C.C. (1967 Supp.), by which a mentally ill inmate of the penitentiary can be transferred to the State Hospital.

For the foregoing reasons we continue this proceeding for sixty days or until a new probation revocation hearing is held by the Parole Board under its rules, whichever is first, when we will entertain a motion to enter such order as is meet in the premises.

TEIGEN, C. J., and STRUTZ, ERICKSTAD and KNUDSON, JJ., concur.

On Amended Motion to Quash Writ
of Habeas Corpus

PAULSON, Judge.

Neil David John petitioned this court for a writ of habeas corpus. The court thereafter ordered that such proceeding be continued for a period of sixty days or until a new probation revocation hearing was held by the Parole Board, pursuant to its rules.

The Board held another hearing on May 29, 1968, at which time petitioner was present in person and with his attorney. This matter comes before us now on the amended motion by the respondents to quash the writ of habeas corpus, on the following grounds:

"1. That the Petitioner, Neil John, is properly imprisoned in the State Penitentiary pursuant to sentence by the District Court, First Judicial District, dated October 3, 1966;

"2. That the said Petitioner, Neil John, has not been released from said sentence by order of the State Parole Board, or otherwise, since the original sentencing; and

"3. That the said Petitioner, Neil John, has not completed serving his time under said sentence."

The amended motion is supported by the records which were on file in the office of the chief parole officer and clerk of the State Parole Board of the State of North Dakota, together with a transcript of the probation violation hearing. In his return to the respondents' amended motion (which return sets forth petitioner's contentions and reasons for his release, and which will be discussed as the same are applicable to this phase of the proceeding), the petitioner alleges that no meaningful and unprejudicial hearing could be granted before the same Board which he had previously accused of having violated his constitutional rights. In addition, he alleges that the Board's judgment of the arguments and statements presented were colored by its previous findings. These two contentions cannot be sustained because there is no provision, under Section 12–59–15 of the North Dakota Century Code, whereby the personnel of such Board may be changed or altered by virtue of the filing of an affidavit of prejudice against such Board, as in cases where an affidavit of prejudice is filed against a judge. Furthermore, a perusal of the transcript shows that John had more than the full hearing required by the statute and by the rules of the Parole Board.

The Board gave John timely notice of the hearing and notice of the claims as to the manner in which he violated his probation. John was represented by retained, competent, and experienced counsel. He was provided with an opportunity to have witnesses to give testimony or evidence in his behalf, and he was afforded the opportunity to cross-examine Mr. Riedman. A transcript of the hearing was provided and the Board complied with all the provisions and requirements of its rules and regulations.

John further asserts that the information now presented to this court on the amended motion was not presented by the respondents at the parole revocation hearing; that is, the letter from the administrator of the State Hospital dated April 29, 1968; the report of the police department of Minneapolis, Minnesota; the report of the police department of Jamestown, North Dakota; and the parole violation report, consisting of one page. A further review of the transcript of the proceedings establishes that Mr. Riedman was called to read the parole violation report, which report summarizes the activities of the petitioner which were the bases for the revocation of his probation. Counsel for John at such time had ample opportunity to cross-examine Mr. Riedman concerning the report and to examine the information contained in the file, but determined not to pursue such a course of action. Certainly where such records were available to John and his attorney, together with the rule providing for the attendance of witnesses at the hearing, and the provision to permit the examination of the file of the chief parole officer prior to the hearing (Sec. 12–59–04, N.D.C.C.), neither the petitioner nor his counsel can now complain because of a belated error in judgment. In fact, the record clearly established the violations committed by John while he was a patient at the State Hospital and that such violations were the grounds for the revocation of his probation. In addition thereto, John's counsel, even though the hearing was in the nature of an administrative hearing and not a

judicial hearing, conceded and admitted all of the activities in which John participated while at the State Hospital and, accordingly, buttressed the parole violation report summarized by Mr. Riedman.

 John strenuously urges that at the time he committed such acts he was in fact mentally incapable of and, accordingly, not responsible for his activities by reason of the sentence of Judge Hager which placed John in a mental institution and thus John's various escapades would not come within the purview of parole violations. The commitment to the State Hospital is not a judicial determination of the legal status of an individual. State ex rel. Sathre v. Roberts, 67 N.D. 92, 269 N.W. 913, 108 A.L.R. 37 (1936). There is nothing in the record to indicate that John was ever judicially declared incompetent. On the contrary, the record reveals that John was fully cognizant of having discussed his rights with his attorney and, when queried by a member of the Parole Board concerning the grounds for revocation of his probation, John refused to answer and requested his attorney to do so in his behalf. The reaction of John to such questions tends also to negate any claim of mental incompetency.

The allegation of mental incompetency was raised in the original argument to the court and in petitioner's original brief. This same contention is again reasserted. However, John has not at any time produced any competent evidence in support of his mental status at the time he was a patient at the Jamestown State Hospital, nor did he present any evidence concerning his mental incompetency at either of the two Parole Board revocation hearings. The burden of proof falls upon John and not upon the respondents to establish his incompetency and, having failed to offer any evidence, this contention cannot be sustained. Zundel v. Zundel, 146 N.W.2d 896 (N.D.1966); 29 Am.Jur., Insane Persons, § 133, p. 254. Furthermore, there has been no showing on the part of John supporting his allegation with reference to the Parole Board's acting in an arbitrary and capricious manner. The record conclusively shows that the Parole Board afforded the petitioner and his counsel unlimited opportunity to present evidence by the petitioner, to cross-examine the witness or witnesses appearing for the respondents, and to secure other witnesses on behalf of the petitioner.

The writ of habeas corpus is quashed.

TEIGEN, C. J., and ERICKSTAD, STRUTZ, and KNUDSON, JJ., concur.