Scileppi, J. (dissenting).
I dissent and vote to affirm, for as I read the Constitution, there is no right to counsel at parole revocation hearings.
Today’s decision equates the revocation of parole with proceedings which directly curtail the freedom of an individual. It is argued that parole revocation results in a loss of liberty which is qualitatively no different than that which results when a person is found guilty of a crime or subjected to civil or administrative deprivations of liberty (see, e.g., Matter of Gault, 387 U. S. 1; Specht v. Patterson, 386 U. S. 605; Gideon v. Wainwright, 372 U. S. 335; cf. Goldberg v. Kelly, 397 U. S. 254). I find no compelling reason in either logic or in constitutional law which justifies such a conclusion. The majority in all candor, admits that the result which it reaches is contrary to the view expressed in the majority of jurisdictions which have considered the problem (see, e.g., Earnest v. Willingham, 406 F. 2d 681; Williams v. Patterson, 389 F. 2d 374; Rose v. Haskins, 388 F. 2d 91, cert. den. 392 U. S. 946; Hodge v. Markley, 339 F. 2d 973, cert. den. 381 U. S. 927; Jones v. Rivers, 338 F. 2d 862; Hyser v. Reed, 318 F. 2d 225, cert. den. sub nom. Thompson v. United States Bd. of Parole, 375 U. S. 957; Washington v. Hagan, 287 F. 2d 332, cert. den. 366 U. S. 970; Johnson v. Stucker, 203 Kan. 253, cert. den. 396 U. S. 904; Beal v. Turner, 22 Utah 2d 418; Robinson v. Cox, 77 N. M. 55; State ex rel. London v. Pardon and Parole Comm., 2 Ohio St. 2d 224; Wingo v. Lyons, 432 S. W. 2d 821 [Ky. Ct. App.]; John v. State, 160 N. W. 2d 37 [Sup. *387 Ct., No. Dak.]; Murray v. State, 444 P. 2d 236 [Okla. Cr.], cert. den. 393 U. S. 1059; Mottram v. State of Maine, 232 A. 2d 809).
Notwithstanding this considerable and prevailing body of authority, it opts for the rule that the due process clause of the Fifth and Fourteenth Amendments to the Federal Constitution requires the presence of counsel at parole revocation hearings. This overlooks the special nature of parole which this court recently emphasized in Matter of Briguglio v. New York State Bd. of Parole (24 N Y 2d 21) where we unanimously held that there was no constitutional right to counsel at parole release hearings. Although it is true that in Briguglio we did not consider the question of counsel at parole revocation hearings (see 24 N Y 2d, at p. 26, n.), our discussion of the nature of the parole system is relevant to the case at bar. As we wrote (24 N Y 2d 26-28)[1]:
‘ ‘ As part of a general program to rehabilitate State prisoners, the Legislature has adopted a comprehensive system of parole. A Board of Parole in the Division of Parole of the Executive Department is charged with the duty of determining what prisoners serving indeterminate sentences in State prisons and other specified reformatories ‘ may be released on parole and when and under what conditions ’ (Correction Law, § 210). Members of the Board of Parole must 'personally study the prisoners confined in the prisons and reformatories of the state * * * so as to determine their ultimate fitness to be paroled ’ (Correction Law, § 210). As each prisoner sentenced under an indeterminate sentence is received in the State institution, the Board of Parole must obtain and file 'information as complete as may be obtainable at that time with regard to each such prisoner ’ (Correction Law, § 211). Section 211 further provides: ‘ Such information shall include a complete statement of the crime for which he is then sentenced, the circumstances of such crime, the nature of his sentence, the court in which he was sentenced, the name of the judge and district *388 attorney and copies of such, probation reports, as may have been made as well as reports as to the prisoner’s social, physical, mental and psychiatric condition and history. It shall be the duty of the clerk of the court, the commissioner of mental hygiene and all probation officers and other appropriate officials to send such information as may be in their possession or under their control to the board of parole upon request. The board of parole shall also at that time obtain and file a copy of the complete criminal record of such prisoner and any family court record that may exist. When all such existing available records have been assembled, they shall be presented to the board of parole or to some officer designated by it, who shall determine whether any further investigation of such prisoner is necessary at that time, and, if so, the nature of such investigation, and shall thereupon order it to be made. Such investigations shall be made while the case is still recent, and the results of them with all other information shall be filed in the office of the division so as to be readily available when the parole of such prisoner is being considered. ’
“ In addition, the Board of Parole is entitled to the benefit of reports and information from the warden of each prison in which the prospective parolee has been confined (Correction Law, § 214) and from ‘ all officers and employees * * * of the department of correction and all other public officials [who] shall at all times cooperate with the board of parole, and shall furnish to such board, its officers and employees such information as may be necessary to enable it to perform its functions ’ (Correction Law, § 222; emphasis added). No prisoner may be released on parole upon his own application, ‘ but solely upon the initiative of the board of parole ’ (Correction Law, § 214). Before a prisoner is initially released on parole, the Board of Parole must have before it a report from the warden or superintendent of the institution in which the inmate has been confined (Correction Law, § 214). That report details the inmate’s conduct in prison and the extent to which the inmate responded to efforts made in the institution to improve his mental and moral condition (Correction Law, § 214). The board must also have a statement of the prisoner’s attitude toward society and toward authority generally and specifically of his attitude toward those who arrested, prosecuted and sentenced him. The *389 board 'shall also have before it the report of such physical, mental and psychiatric examinations as have been made of such prisoner which so far as practicable shall have been made within two months of the time of his eligibility for parole ’ (Correction Law, § 214). Finally, ‘ before releasing any prisoner on parole, ’ the Board of Parole shall have him appear and ‘ shall personally examine him and check up so far as possible the reports ’ which they have before them (§ 214). The statute (§ 213) makes it quite clear that ‘ Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board of parole is of opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible . with the welfare of society. ’ ”
The Parole Board makes, what is basically a discretionary determination, that the prisoner is a person suitable for the privilege of parole, and the prisoner is allowed to leave the jailhouse. He is not, however, a free man. The parolee remains under active administrative supervision of parole officials. Thus, when the relator herein was initially placed on parole he was not at liberty to engage in any course of conduct which he saw fit. He was granted conditional liberty as a matter of grace and not as of right (Mottram v. State of Maine, supra) and he retained his status as a convict (see Escoe v. Zerbst, 295 U. S. 490). In this regard it is significant that he has already been arrested, tried and convicted in accordance with the constitution. As a result of this conviction, he has been sentenced to punishment by imprisonment. True, he was thereafter paroled but parole is not an unconditional discharge. It is merely an administrative declaration that if the conditions are satisfied, the parolee may serve ‘ ‘ the remainder of his sentence by having his liberty restrained in a manner analogous to that employed in the ‘ trusty ’ or 'honor’ system of prison discipline ” (Commonwealth ex rel. Banks v. Cain, 345 Pa. 581, 588). As the Supreme Court said in Anderson v. Corall (263 U. S. 193, 196): "The parole authorized by the statute does not suspend service or operate to shorten the term. While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term * * * While *390 this is an amelioration of punishment, it is in legal effect imprisonment.” Thus, the Parole Board was free to alter the nature of relator’s imprisonment when relator violated his parole. The question whether the parolee should be subjected to a revocation of his parole is not an accusation of a crime, but merely a determination of whether the parolee may still receive the privilege of parole. Though the revocation of parole required that relator serve the balance of his sentence inside prison walls,[2] the action of the board was not a taking of his liberty within the meaning of the due process clause.
It would appear that the conclusion reached by the majority has been strongly motivated by cases such as Mempa v. Rhay (389 U. S. 128) where the Supreme Court held that there was a constitutional right to counsel where probation was revoked and the defendant was then resentenced. Any view that probation and parole are to be governed by the same rules is, I suggest, unfounded. As we explicitly recognized in Matter of Briguglio v. Board of Parole, (supra, at pp. 25-26):
“ That Mempa is purely a sentencing case and, therefore, is of little value in defining the rights of one who has already been sentenced is made manifest by the Supreme Court’s decision in McConnell v. Rhay (393 U. S. 2, 3-4).
* * *
‘ ‘ Indeed, in several cases decided within the past year, the Federal courts have held that Mempa v. Rhay (supra), being a sentencing case, sheds no light on the problem of whether a parolee is entitled to counsel at a revocation hearing (see Eason v. Dickson, 390 F. 2d 585; Williams v. Patterson, 389 F. 2d 374; Rose v. Haskins, 388 F. 2d 91; Holder v. United States, 285 F. Supp. 380). Each of the cited cases held that a revocation hearing is not a trial requiring an adversary proceeding with representation by counsel.”
(See, also, Johnson v. Stucker, supra, at p. 256.) Therefore, I am unable to agree with the majority’s assertion that the Mempa rationale encompasses hearings for the revocation of parole. Though it is true that both revocation of parole and revocation of probation involve factual determinations, the basis of the right to counsel at proceedings to revoke probation *391 is, that the criminal trial, which includes sentencing has not ended. Additionally, the probationer is subject to an increased sentence at the revocation hearing. Such is not the case with the parolee. He is not subject to increased sentence and may only be required to serve out the balance of the maximum term for which he was originally sentenced or a part thereof as the Board of Parole may determine (Correction Law, § 218). The two proceedings are not constitutional equivalents. As Chief Judge Weick of the Sixth Circuit Court of Appeals wrote in Bose v. Haskins (supra, at p. 95): “ The constitutional rights of [relator] which he claims were violated, apply prior to conviction. They are not applicable to a convicted felon whose convictions and sentences are valid and unassailable, and whose sentences have not been served.” Thus, relator’s rights on the revocation of parole were limited to those provided by the Legislature. The relevant statute (Correction Law, § 218) provided, inter alia, that: ‘ ‘ Whenever there is reasonable cause to believe that a prisoner who has been paroled by the state board of parole, has violated his parole, such board of parole as soon as practicable shall declare such prisoner to be delinquent * * * [The warden of each prison * * * shall promptly notify the state board of parole of the return of a paroled prisoner charged with violation of his parole. Thereupon such] board of parole shall, as soon as practicable, [hold a parole court at such prison or institution and consider the case of] such parole violator [, who shall be given] an opportunity to appear personally, but not through counsel or others, before such board of parole and explain the charges made against him.” (Emphasis supplied.) It is, therefore, clear that what is contemplated is not a full-blown trial but rather an informal nonadversary proceeding. I do not think that we should assume that the Parole Board, whose aim and purpose is to benefit the defendant, becomes his adversary when he violates one of the conditions of his parole. Thus, I do not agree with the majority’s assertion that relator’s right to be heard is meaningless without the presence of counsel. As I have indicated, parole is largely a matter of discretion and the board is faced with the question whether the parolee has engaged in a course of conduct which requires the board to rescind the original decision that he could benefit from parole. Moreover, the presence of counsel in such a proceeding would *392 hinder the board from the performance of this role. As pointed out by Judge Breitel, it would unnecessarily result in undue delays and procedural difficulties which already plague the administration of criminal justice. This has apparently been recognized by the drafters of the Model Penal Code who have not suggested that counsel be present at parole revocation hearings. Instead they merely recommend that in preparing for the hearing, the parolee ‘‘be permitted to advise with his own legal counsel ” (A. L. I. Model Penal Code, Proposed Official Draft [1962], § 305.15).
The Legislature has declared that counsel is unnecessary at such a proceeding and I am not persuaded that this provision is violative of either the State or Federal Constitutions. In this regard, the majority has taken the view that parole revocation hearings conducted without the presence of counsel are offensive to a concept of fair play under notions of procedural due process. This is an unwarranted extention of the due process clause. As Mr. Justice Black wisely cautioned in his dissenting opinion in In re Winship (397 U. S. 358, 384-385):
‘ ‘ The many decisions of this Court that have found in [the due process clause] a blanket authority to govern the country according to the views of five members of this institution have ignored the essential meaning of the very words they invoke. When this Court assumes for itself the power to declare any law—state or federal—unconstitutional because it offends the majority’s own views of what is fundamental and decent in our society, our Nation ceases to be governed according to the ‘ law of the land ’ and instead becomes one governed ultimately by the ‘ law of the judges. ’
‘‘ It can be, and has been, argued that when this Court strikes down a legislative act because it offends the idea of ‘ fundamental fairness,’ it furthers the basic thrust of our Bill of Rights by protecting individual freedom. But that argument ignores the effect of such decisions on perhaps the most fundamental individual liberty of our people—the right of each man to participate in the self-government of his society.
* * *
‘‘And the States, to the extent they are not restrained by the provisions in that document, were to be left free to govern themselves in accordance with their own views of fairness and *393 decency. Any legislature presumably passes a law because it thinks the end result will help more than hinder and will thus further the liberty of the society as a whole. The people, through their elected representatives, may of course be wrong in making those determinations, but the right of self-government that our Constitution preserves is just as important as any of the specific individual freedoms preserved in the Bill of Rights.” Lastly, it would appear that the majority has confused what is constitutionally required with what may be desirable and sustainable if promulgated by a duly constituted legislative body. While some commentators and advisory commissions have recommended that counsel be afforded at parole revocation hearings (see, e.g., Task Force Report: Corrections, pp. 6, 70, 97; Note Constitutional Law: Parole Status and the Privilege Concept, 1969 Duke L. J. 139, 145-146), these are not pronouncements of constitutional law, but merely suggestions. The Legislature, however, has not chosen to adopt such a recommendation and I see no compelling reason why we should substitute their judgment or ours for that exercised by the Legislature.
Accordingly, the judgment appealed from should be affirmed.

. It is noted that in the time which has elapsed since our decision in Briguglio, there have been several amendments and additions to the statutes discussed therein (see L. 1969, ch. 270; L. 1970, ch. 476; Correction Law, § 212). These amendments have not altered the underlying concept of the parole system of this State and as the majority observes, at footnote 1, p. 378 of its opinion, they have no effect on the instant case.

. This, of course, is not to say relator will never again be eligible for parole (see Correction Law, § 212, subd. 7).