THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DELBERT ELLIS, Defendant-Appellant.

(Nos. 11964-66 cons.;

Fourth District—February 26, 1973.

TRAPP, J., dissenting.

John F. McNichols, of Defender Project, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur, (James R. Coryell, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

The defendant appeals from convictions entered upon his plea of guilty to one charge of forgery and two charges of burglary. Three concurrent sentences of not less than two years nor more than six years were imposed.

The offenses here involved were committed in October and December 1971. The forgery charge relates to forging the signature of the maker on a $5 check and the two burglary charges relate (1) to taking two radios, a record player and $140 in cash from a business establishment known as Colonel's Auction, and (2) taking of a television set, a record player, a guitar, and jewelry box from a private residence.

The defendant was born in August 1954, thus, he was 17 years old at the time of the offenses and at the time of all the proceedings here under review. He urges that the treatment of a 17-year-old male as an adult is violative of his constitutional right to equal protection of the law inasmuch as 17-year-old females at the time of these proceedings would have been subject to the provisions of the Juvenile Court Act.

The pleas of guilty in this case originated through plea bargaining after the defendant had been in jail for some 98 days in lieu of bail. The agreement reached by negotiation was one to the effect that the defendant would enter pleas of guilty and ask for probation. The matter would be referred to the probation officer and the State's Attorney agreed to concur in the recommendation of the probation officer with reference to the issue of probation. In the event that probation was denied, then

the recommendation of the People would be the imposition of three concurrent sentences, each with a minimum of two years and the maximum of six years.

The report of the probation officer was filed in the circuit court in May of 1972 and that report recommended the denial of the petition for probation. At the hearing on the petition, the State's Attorney concurred in that recommendation and urged denial. The defendant and his father, William Ellis, testified in support of the petition for probation.

At the hearing, it was developed that the defendant had been involved at an earlier date in the theft of some bicycles and had been on probation as a result of a delinquency proceeding in Moultrie County and had a curfew violation in May of 1971. The foregoing was his prior criminal record. The evidence was that the defendant was one of thirteen children, nine of whom were still living at home with the parents. The father was then unemployed and had been for several months. The family income was unemployment compensation and income received from the Aid to Dependent Children program. The mother is described as in poor health suffering from diabetes and an inactive stage of tuberculosis and had recently been hospitalized for four months. Three other children of this family had been involved either in criminal or delinquency proceedings in Macon County. In denying probation, the court observed to the father that:

> "Mr. Ellis, in passing on these petitions we're always looking for something favorable on which we think maybe probation will work, in that we hope that we can grant probation and it will be successful.
>
> One of the things we look for us, what is his home life, how much help will he get from his parents, and here we couldn't have a more miserable picture than what this report shows. As far as father you appear to be a complete failure. You haven't worked all winter, you're living off of welfare. When asked about ADC, you say some, like it is pittance and the report shows you're drawing a lot of money, $338.00 ADC and two hundred and some on compensation.
>
> You haven't had control of this boy for years, have you? In that this shows back in '69 he was kicked out of Mt. Zion school and he was only 14 then.
>
> You can't manage your family, can you, when the report shows that his older brother has been to the penitentiary and his younger brothers are in trouble now?
>
> If he were returned to your home, you wouldn't be the slightest bit of good influence on him, would you?"

Section 702—2, ch. 37 of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 702—2), defines a delinquent minor as "any boy who prior to his 17th birthday or girl who prior to her 18th birthday has violated or attempted to violate * * * any * * * state law * * *". Section 702—7, ch. 37, of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 702—7), provides that unless the procedure set out in the Juvenile Court Act was followed: "No boy who was under 17 years of age or girl who was under 18 years of age *at the time of the alleged offense* may be prosecuted under the criminal laws of this state * * *". (Emphasis supplied.) The defendant thus argues that a female defendant under the exact same facts and circumstances as those existing in his case would be afforded the protection of at least having the Juvenile Court Act procedure followed prior to prosecution as an adult felon. The different classification by age because of sex is said to be violative of equal protection of the laws and to be specifically prohibited by section 18 of article 1 of the 1970 Illinois Constitution. This constitution became effective on July 1, 1971 and is fully applicable here. That section reads:

"The equal protection of the laws shall not be denied or abridged on account of sex by the State or its units of local government and school districts." S.H.A., Const., Art. 1, Sec. 18.

The contention of the defendant with reference to unconstitutional classification was considered by the Illinois Supreme Court in *People v. Pardo,* 47 Ill.2d 420, 265 N.E.2d 656. That opinion was filed in November 1970 and rehearing was denied in January 1971. The court in *Pardo* was considering the validity of the classification in the Juvenile Court Act with reference to the equal protection clause of the then Illinois Constitution and upheld the classification as being neither invidious nor arbitrary but within the legislative discretion.

The defendant acknowledges the holding in *Pardo* as contrary to his present contentions and asserts that the subsequent adoption of the new constitution and that subsequent developments in the area of equal protection as it relates to classfication based upon sex are such that *Pardo* may no longer be controlling. These subsequent developments are that the United States Supreme Court in *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225, invalidated an Idaho statute that gave mandatory preference to male applicants over female applicants with reference to appointment of administrators of a decedent's estate. Such was held to be violative of the equal protection clause of the United States Constitution.

In *Stanley v. Illinois* (April 1972), 405 U.S. 645, 31 L.Ed.2d 551, the United States Supreme Court held that an Illinois statute which made the children of unwed fathers wards of the state upon the death of the

mother unconstitutional. It was a denial of equal protection, the court held, to refuse a hearing to unmarried fathers as to their fitness and to have custody of their children and to presume that unwed fathers as opposed to unwed mothers are unsuitable or neglectful parents. In the case of *A v. City of New York,* the court of appeals of New York in an opinion rendered July 7, 1972, 31 N.Y.2d 83, 335 N.Y.S.2d 33, held a New York statute that purported to differentiate between males and females on the basis of age to be unconstitutional. The court said:

"(3) Discrimination by the State between different classes of citizens must, at the very least, 'have some relevance to the purpose for which the classification is made.' (Baxstrom v. Herold, 383 U.S. 107, Ill. 86 S.Ct. 760, 763, 15 L.Ed.2d 620; see, also, Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551, decided April 3, 1972; Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349, decided March 22, 1972; Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225; Matter of Jesmer v. Dundon, 29 N.Y.2d 5, 9; Seidenberg v. McSorley's Old Ale House, D.C., 308 F.Supp. 1253; Sail'er Inn, Inc. v. Kirby, 5 Cal.3d 1, 95 Cal.Rptr. 329, 485 P.2d 529; Matter of Louise B., 68 Misc.2d 95, 326 N.Y.S.2d 702.) Phrased somewhat differently, the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike'. (Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 254, supra.)

(4) The object of the PINS statute is to provide rehabilitation and treatment for young persons who engage in the sort of conduct there proscribed. This affords no reasonable ground, however, for differentiating between males and females over 16 and under 18. Girls in that age bracket are no more prone than boys to truancy, disobedience, incorrigible conduct and the like, nor are they more in need of rehabilitation and treatment by reason of such conduct."

In *Pardo,* our Supreme Court noted that Illinois was not alone in distinguishing between males and females on the basis of age for purposes of determining their juvenile status and cited Oklahoma and Texas statutory provisions. The Oklahoma statutory provision was the subject of review, and in *Lamb v. State,* 475 P.2d 829, the court upheld the classification "premised upon the demonstrated facts of life" and refused to interfere with the legislative judgment. Subsequent to that opinion, the United States Court of Appeals, 10th Circuit, in *Lamb v. Brown,* 456 F.2d 18, declared the statute unconstitutional and concluded that there was no rational justification for the disparity and treatment between males

between the ages of 16 through 18 and females of like age. They thus invalidated the statute.

The statutory provision in Illinois here under review was changed as part of the new Code of Corrections and section 702—7 has been amended to provide that no minor who was under 17 years of age at the time of the alleged offense may be prosecuted except as provided in the Juvenile Court Act. Such amendment was by Public Act 77—2096, effective January 1, 1973. The prior classification here under attack, while not unique to Illinois at the time, has been changed. The Oklahoma statute has likewise been changed and it now appears that Texas is unique in distinguishing between males and females on the basis of age for purposes of determining their juvenile status. An appendix attached to the appellant's brief makes reference to the statutory provisions of all of the states and the only state that now distinguishes between males and females for purposes of determining juvenile status by age and sex is the State of Texas.

■■ The decision of the Illinois Supreme Court in *Pardo* is determinative of the issue and clearly binding upon this court upon the issues of the validity of the classification under the constitution of 1870. However, subsequent adoption of the new constitution and the specific provision in the Bill of Rights of that constitution of a self-executing prohibition against a denial of equal protection of the law on account of sex is now applicable. This is clearly in addition to the equal protection clause and carves out an *additional* protection. The statutory provision here under review is clearly a denial of equal protection based upon a classification by the state on account of sex and the same is invalid and unconstitutional. The defendant was, therefore, at least entitled to the procedural protection of the Juvenile Court Act before prosecution as an adult. The denial of that protection and the granting of such protection to a female defendant similarly situated clearly amounts to a denial of equal protection.

■■ This issue was not presented to nor ruled upon by the trial court and it is generally held that such failure precludes raising the issue for the first time upon appeal. (*People v. Amerman,* 50 Ill.2d 196, 279 N.E.2d 353.) There are, however, exceptions to that rule which we think are applicable here. Under Supreme Court Rule 615 and the predecessor statute with reference to plain error, this court is permitted to note substantial defects or plain errors that affect substantial rights or that relate to fundamental fairness. We do so even if the issue was not presented to and passed upon by the trial court. In *People v. Shelton,* 42 Ill.2d 490, 248 N.E.2d 65, the Supreme Court noted that a plea of guilty would not preclude inquiry into an asserted violation of constitutional rights. In *People v. Evans,* 37 Ill.2d 27, 224 N.E.2d 778, the defendant had

voluntarily entered a plea of guilty but claimed that the trial court admonitions were inadequate so that he could not have knowingly and intelligently waived constitutional rights. In this case, as in *Evans*, a substantial right of the defendant is involved. That right is of constitutional dimensions and although not raised in the trial court, under the authority of Supreme Court Rule 615 and the doctrine of plain error affecting substantial rights, we reach the issue. See *People v. Weinstein*, 35 Ill.2d 467, 220 N.E.2d 432; *People v. Henderson*, 119 Ill.App.2d 403, 256 N.E.2d 84; and *People v. McCollough* (1972), 8 Ill.App.3d 963, 291 N.E.2d 505.

We note here that a penitentiary sentence was imposed upon denial of probation and the record clearly reflects the home situation was a factor in the trial court's determination that probation might not succeed. We note that if proceedings had been instituted under the Juvenile Court Act by way of delinquency petition, additional dispositional options would have become available to the trial court upon a determination of delinquency. (See Ill. Rev. Stat. 1971, ch. 37, par. 705—2, *et seq.*) We also note that the statute refers to age *"at the time of the alleged offense"* (emphasis supplied) and not age at the time of the proceeding. Ill. Rev. Stat. 1971, ch. 37, par. 702—7.

■■ The judgment of the circuit court of Macon County is reversed and this cause is remanded to that court with directions to afford the defendant those rights under the Juvenile Court Act he would have had but for the denial of equal protection as of the date of this offense notwithstanding the present age of the defendant.

Reversed and remanded with directions.

SIMKINS, J., concurs.

Mr. JUSTICE TRAPP dissenting:

The conviction should be affirmed upon the authority of *People v. Pardo*, 47 Ill.2d 420, 265 N.E.2d 656. In *Pardo* there was claim of denial of equal protection under the Fourteenth Amendment of the United States Constitution. On May 24, 1971, the United States Supreme Court dismissed *Pardo's* appeal "for want of a substantial federal question". (*Pardo v. Illinois*, 402 U.S. 992, 29 L.Ed.2d 158, 91 S.Ct. 2179.) There is similar constitutional history in *Wark v. State*, Me., 266 A.2d 62. The Supreme Court of Maine held valid a classification between males and females for the purpose of a sentence imposed for the offense of escape. (*Cert.* denied, 400 U.S. 952, 27 L.Ed.2d 259, 91 S.Ct. 255). Thereafter, *habeas corpus* based upon a claim of denial of equal protection was denied in the Federal District Court. Such denial was affirmed in *Wark v. Robbins*, 458 F.2d 1295.

Neither *Stanley v. Illinois,* (U.S.), 31 L.Ed.2d 551, (92 S.Ct.), nor *Reed v. Reed,* 404 U.S. 71, 30 L.Ed.2d 225, 92 S.Ct. 251, are persuasive authority upon this issue. In *Stanley,* the denial of equal protection was sustained upon the fact that an unmarried father was denied a hearing upon the issue of fitness for custody, whereas such hearing was required in order to take custody from the married father. The issue of equal protection was not essentially a matter of classification by sex. In *Reed,* the person contesting the appointment as administrator was of the same statutory class. The Idaho Supreme Court stated that the statutory preference of appointment of the male member of the class was a means of eliminating controversy in the Probate Court among those in the same class seeking appointment. The United States Supreme Court found a denial of equal protection because of want of valid criteria related to the objectives of probate statute. Here, however, the question of criteria is settled by *Pardo.*

The principal opinion asserts the supremacy of Art. 1, § 18 of the Illinois Constitution of 1970. A search of the Report of Proceedings of the Convention reveals no committee examination or report upon the Section and no debate thereon. That Constitution in Art. 1, § 2, provides that no person shall be denied due process or "the equal protection of the law". The principle of equal protection has been explored since the adoption of the Fourteenth Amendment of the United States Constitution. Section 2 appears to substantially adopt the language of the Fourteenth Amendment, and presumably its meaning. In *Reed,* the Supreme Court said:

> "In applying that clause, this Court has consistently recognized that the Fourteenth Amendment does not deny the States the power to treat different classes of persons in different ways."

The Records of Proceedings, Vol. I, pages 547 and 548, of the Sixth Illinois Constitutional Convention, Journal of August 6, 1970, reveals that such Art. 18 was first presented from the floor of the Convention in the language "Equality under the law * * *." Upon motion made and adopted, the language was amended to read, "The equal protection of the law * * *." Such action gives a reasonable basis for concluding that the "equal protection" of Art. 18 is to be applied within the perimeter of established constitutional history, rather than to create a new inflexible equality.

Despite the infinite breadth in the spectrum of the equal protection clause of the Fourteenth Amendment, the principal opinion would create a new "equal protection" which could only operate independently or at variance within the established constitutional history. Since "equal protection" can only be "equal protection", the constitutional anamoly created is not required.