511 P.2d 822

**Dan P. HARRIGFELD et al., Petitioners,**

**v.**

**The DISTRICT COURT OF the SEVENTH JUDICIAL DISTRICT of the State of Idaho, IN AND FOR the COUNTY OF FREEMONT and the Honorable Willard C. Burton, District Judge, Respondents.**

**No. 11281.**

Supreme Court of Idaho.

July 5, 1973.

Dennis M. Olsen, Petersen, Moss, Olsen, & Beard, Idaho Falls, for petitioners.

A. L. Smith, Albaugh, Bloem, Smith & Pike, Idaho Falls, for respondents.

DONALDSON, Chief Justice.

On August 5, 1971, Dean Sallenger was killed when the motorcycle he was operating collided with a tractor owned by Ira Harrigfeld and Lida Harrigfeld and being operated by their son, Dan P. Harrigfeld. At the time of his death, Sallenger was twenty years of age. He was married to Pamela C. Sallenger and they were the parents of a minor daughter, Pamela ·R. Sallenger.

On February 23, 1972, Sallenger's widow, and his minor daughter, by Mrs. Sallenger as guardian ad litem, commenced an action against Dan P. Harrigfeld, Ira Harrigfeld and Lida Harrigfeld, alleging that negligence on the part of Dan P. Harrigfeld caused the accident, resulting in Sallenger's death. They sought general and special damages in the amount of $201,607.86. In the complaint, the plaintiffs alleged that they were Sallenger's sole heirs at law.

The Harrigfelds first moved to dismiss the complaint for failure to state a claim on which relief could be granted. They were subsequently permitted to amend this motion to include the contention that the action should be dismissed because the plaintiffs had failed to allege that, at the time of his death, Dean Sallenger was not a minor, as required by the wrongful death statute (I.C. § 5–311) under which the cause of action was being prosecuted. The Harrigfelds also filed a motion to dismiss the complaint for lack of jurisdiction on the ground that the action was being brought and prosecuted by the wife and child of a deceased minor, and that, under the Idaho wrongful death statutes (I.C. §§ 5–310, 311) in effect at the time of Sallenger's death, no such cause of action existed.

The district court Hon. Willard C. Burton, district judge, denied the Harrigfelds' motion to dismiss. The Harrigfelds then petitioned this Court for an alternative writ of review and alternative writ of prohibition, pursuant to I.C. §§ 7–202, 7–401, 7–402. They alleged that in denying their motions to dismiss and in permitting the plaintiffs to continue with their lawsuit, the district court had exceeded its jurisdiction and that they were without an adequate remedy in the ordinary course of law.

An alternative writ of prohibition was issued by this Court and hearing was had following the filing of the plaintiffs' return to the defendants' petition.

The petitioners' grounds for issuance of the Writ are as follows: The Idaho Statute concerning minority, which was in effect at the time of Sallenger's death, placed the age of majority for males at twenty-one years.[1] Therefore, at the time of his death, Sallenger, at twenty years of age, was a minor according to the statute. Under the wrongful death statutes in effect at the time of Sallenger's death, the only parties with standing to sue for the wrongful death of a minor were his parents or guardian.[2] The heirs or personal

---

1. Prior to its amendment in 1972, I.C. § 32–101 read as follows:

   "*Minors defined.*—Minors are:
   1. Males under twenty-one (21) years of age.
   2. Females under eighteen (18) years of age.
   3. Provided, that any male eighteen (18) years of age or more, or any female under eighteen (18) years of age, who have [sic] been married shall be competent to enter a contract, mortgage, deed of trust, bill of sale and conveyance, and sue or be sued thereon."

2. Prior to its amendment in 1972, I.C. § 5–310 read as follows:

   "*Action for injury to child.*—The parents may maintain an action for the injury or death of a minor child, and a guardian for the injury or death of his ward, when such injury or death is caused

representative of a decedent were given a cause of action only if the decedent was not a minor.[3] Therefore, petitioners argue, as heirs of a deceased minor, Mrs. Sallenger and her daughter do not have a cause of action under the law in force at the time of Sallenger's death.[4]

In 1972 the Idaho Legislature made significant changes in all three of the statutes relied on by the petitioners. Under present Idaho law, eighteen is the age of majority for both males and females.[5] The wrongful death statutes now in effect provide a cause of action to the surviving spouse and issue of a deceased married minor.[6] Therefore, it is clear that had either the revised minority statute or the revised wrongful death statutes been in ef-

fect at the time of Sallenger's death, the plaintiffs would unquestionably have been entitled to bring an action for Sallenger's death.

The plaintiffs, Sallenger's widow and minor daughter, base their opposition to the issuance of a permanent writ of prohibition on constitutional grounds. They contend that Idaho's former minority statute, *supra* note 1, which placed the age of majority for males at twenty-one and for females at eighteen, was repugnant to the fourteenth amendment of the United States Constitution in that it denied to males between the ages of eighteen and twenty-one equal protection of the laws. They argue that as the former version of I.C. § 32–101 accorded females the benefits of adult sta-

by the wrongful act or neglect of another, but if either the father or mother be dead or has abandoned his or her family, the other is entitled to sue alone. Such action may be maintained against the person causing the injury or death, or if such person be employed by another person, who is responsible for his conduct, also against such other person."

3. Prior to its amendment in 1972, I.C. § 5–311 read as follows:
"*Action for wrongful death.*—When the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death; or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just." C.C.P. 1881, § 192, as amended I.C. § 5–311 (Supp.1972).

4. In an affidavit submitted to this Court, Sallenger's widow avers that Sallenger's mother and father are divorced, and that Sallenger's father had abandoned Sallenger and ceased to provide support for him long before his marriage. Apparently Sallenger's mother declined to attempt to bring an action for his alleged wrongful death.

5. "*Minors defined.*—Minors are:
   1. Males under eighteen (18) years of age.
   2. Females under eighteen (18) years of age.

3. Provided, that any male or any female who has been married shall be competent to enter a contract, mortgage, deed of trust, bill of sale and conveyance, and sue or be sued thereon." I.C. § 32–101.

6. "*Action for injury or death of unmarried child.*—The parents may maintain an action for the injury or death of an unmarried minor child, and for the injury or death of a minor child who was married at the time of his death and whose spouse died as a result of the same occurrence and who leaves no issue, and a guardian for the injury or death of his ward, when such injury or death is caused by the wrongful act or neglect of another, but if either the father or mother be dead or has abandoned his or her family, the other is entitled to sue alone. Such action may be maintained against the person causing the injury or death, or if such person be employed by another person, who is responsible for his conduct, also against such other person." I.C. § 5–310.
"*Action for wrongful death.*—When the death of a person, not being a person provided for in section 5–310, Idaho Code, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death; or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just." I.C. § 5–311.

tus at age eighteen, the fourteenth amendment required that males be treated equally, and also be considered adults at eighteen. Under this line of reasoning, Dean Sallenger was a person "not being a minor" at the time of his death. Therefore, plaintiffs argue, under the wrongful death statutes in effect at the time of Sallenger's death, *supra* notes 2, 3, the proper parties to bring an action for his alleged wrongful death would be his heirs—his widow and minor daughter.

■ Before a litigant may challenge a statute's constitutionality,

"it must appear that the alleged unconstitutional provisions operate to the hurt of the [litigant] and adversely affect his rights or put him to a disadvantage. It is a fundamental principle of constitutional law that a person can be heard to question the constitutionality of a statute only when and insofar as it is being, or is about to be, applied to his disadvantage." State v. Clark, 88 Idaho 365, 376–377, 399 P.2d 955, 962 (1965). *See also* Greer v. Lewiston Golf & Country Club, Inc., 81 Idaho 393, 395–396, 342 P.2d 719 (1959).

Application of the former minority statute to the facts of this case, would effectively preclude the plaintiffs from asserting their claim for damages for the death of their husband and father, to their potential prejudice. Therefore, although Mrs. Sallenger and her daughter are not members of the class which was allegedly unfairly burdened by the statute (eighteen-, nineteen-, twenty-year-old males), they have sufficient personal interest in the matter to raise the constitutional question. *Cf.* Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L. Ed.2d 349 (1972).

■ We agree with the plaintiffs that the former Idaho minority statute, which provided different ages of majority for men and women, constituted a violation of the equal protection clause of the fourteenth amendment.

Federal and state legislation providing for differing treatment of persons solely on the basis of sex has come under increasing attack; and in many cases has been found unconstitutionally to deny due process (cases involving federal statutes) and/or equal protection of the laws These cases include Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed. 2d 583 (1973); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551, (1972); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Moritz v. C. I. R., 469 F.2d 466 (10th Cir. 1972); Commonwealth, Alcoholic Beverage Con. Bd. v. Burke, 481 S.W.2d 52 (Ct. App.Ky.1972). *See also* Bennett v. Dyer's Chop House, Inc., 350 F.Supp. 153 (N.D. Ohio 1972); Reed v. Nebraska School Activities Association, 341 F.Supp. 258 (D. Neb.1972); Owen v. Illinois Baking Corporation, 260 F.Supp. 820 (W.D.Mich. 1966). Statutory discriminations against men, *e. g.*, Stanley v. Illinois, *supra*; Moritz v. C. I. R., *supra*, as well as against women, have been disapproved. The conventional assumptions of popular wisdom regarding the necessity for such differing treatment have been challenged.[7]

One of the areas which has been subjected to increasing legislative and judicial scrutiny has been that of age-sex discrimination. Statutes which treat persons of the same age differently, solely on the basis of sex, have been found to violate the equal protection clause of the Constitution.

7. An examination of the Indexes to Legal Periodicals for recent years reveals a flood of articles criticizing the "gross, stereo-typical distinctions between the sexes," Frontiero v. Richardson, *supra*, 411 U.S. at 685, 93 S.Ct. at 1769, which have, until recently, held an unquestioned place in the statute books. *See*, for example, Comment, Are Sex-Based Classifications Constitutionally Suspect? 66 Nw. U.L.Rev. 481 (1971); Ginsburg, Sex and Unequal Protection: Men and Women as Victims, 11 J. Fam.L. 347 (1971; Kanowitz, Sex-Based Discrimination in American Law I. Law and the Single Girl, 11 St. Louis U.L.J. 293 (1967).

Lamb v. Brown, 456 F.2d 18 (10th Cir. 1972); Ex parte Matthews, 488 S.W.2d 434 (Tex.Cr.App.1973); People v. Ellis, 10 Ill.App.3d 216, 293 N.E.2d 189 (1973); A. v. City of New York, 31 N.Y.2d 83, 335 N.Y.S.2d 33, 286 N.E.2d 432 (Ct.App. 1972); In re B., 68 Misc.2d 95, 326 N.Y. S.2d 702 (Fam.Ct.1971). *See also* the discussion of this issue in Kanowitz, Constitutional Aspects of Sex-Based Discrimination in American Law, 48 Neb.L.Rev. 131, 157–60 (1968). As noted above, the Idaho legislature has now established eighteen as the age of majority for both men and women. I.C. § 32–101.

Many of the cases which have found sex-discriminatory legislation to constitute a denial of equal protection have employed "traditional" equal protection analysis.

In the landmark case of Reed v. Reed, *supra*, the United States Supreme Court applied the "traditional" standard. The Court there stated:

> "The Equal Protection Clause * * * den[ies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the object of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " 404 U. S. at 75–76, 92 S.Ct. at 253–254, quoting Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

In the *Reed* case, the Supreme Court held that a provision of the Idaho probate code, which gave preference to men over women when persons of the same entitlement class applied for the position of administrator of a decedent's estate, constituted a violation of the equal protection clause of the fourteenth amendment.

In the recent case of Frontiero v. Richardson, *supra*, a plurality of the United States Supreme Court held that,

"classifications based upon sex, like classifications based upon race, alienage, or national origin, are inherently suspect, and must therefore be subjected to strict judicial scrutiny." 93 S.Ct. at 1771. *Cf.* I.C. §§ 18–7301–7303 (Idaho's Civil Rights Act).

The *Frontiero* opinion stated that the basis for aligning sex with the other "suspect criteria" such as race and alienage is that "the sex characteristic frequently bears no relation to ability to perform or contribute to society." 93 S.Ct. at 1770. The *Frontiero* case invalidated a statutory scheme whereby married female members of the uniformed services were denied dependents' benefits for their spouses, unless they could prove dependency in fact, while married servicemen were automatically given dependents' benefits for their wives, regardless of actual dependency.

■ The purpose of statutes which designate the age at which a young person legally becomes an adult is to protect minors, who presumably are not well-versed in legal, practical and business matters, from the adverse consequences of their inexperience. *See* Ames v. City of Hermosa Beach, 16 Cal.App.3d 146, 93 Cal.Rptr. 786 (1971). *See generally* 42 Am.Jur.2d, Infants § 1 (1969).

Petitioner suggests that Idaho's former minority statute was based on a legislative determination that females of eighteen possessed as much "discretion" as males of twenty-one and therefore were fitted to attain majority at an earlier age. A minority law providing that the age of majority for males was twenty-one and for females, eighteen, was first enacted by the Legislative Assembly of the Territory of Idaho in 1864. S.L. 1864, pp. 515–16. The same sex-age differential in regard to the age of majority persisted unchanged in Idaho's laws until 1972.

> "[T]he mores and practices of a society that has traditionally encouraged males and discouraged females from [active participation in business and public affairs] cannot be ignored. Against that

social background, a legislative determination that females achieve 'discretion' earlier than males * * * is not merely a matter about which reasonable people may differ, but stands out as an arbitrary and unreasonable classification prohibited by the equal protection clause of the United States Constitution." Kanowitz, Constitutional Aspects of Sex-Based Discrimination in American Law, 48 Neb.L.Rev. 131, 159 (1968).

Furthermore, the fact that the Idaho legislature has abolished differing ages of majority for men and women is proof that, whatever purpose may have been considered to be served when such a differential was first adopted in 1864, it is no longer perceived to exist.

We therefore consider that the former minority statute embodied an arbitrary classification scheme which unreasonably discriminated between men and women and imposed the disabilities of minority on males (especially unmarried males, see note 1, *supra*) for three years longer than on females, without rational justification.

Petitioners argue that if the former version of I.C. § 32–101 is declared to have been unconstitutional, the statute must fall entirely and the common law must be applied. At common law, twenty-one was the age of majority for both men and women. II W. Holdsworth, A History of English Law, ch. 4 § 4, p. 510 (5th Ed., Reprinted 1966).

■ A holding that a statutory classification scheme constitutes a denial of equal protection because it unreasonably grants a benefit to one class while denying it to another, does not necessarily mandate a denial of the benefit to both classes. In the recent case of Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), the United States Supreme Court found that a Louisiana statute granting legitimate children a cause of action for the wrongful death of their mother, while excluding illegitimate children from the right to bring such an action, violated the fourteenth amendment. Instead of invalidating the

entire statutory scheme, the Supreme Court ordered that the benefit of the existing statute be extended to the class which was formerly wrongfully excluded. *See also* the discussion of extending the benefit of a statute to an improperly excluded class in Robison v. Johnson, 352 F.Supp. 848, 861 (D.Mass. 1973).

The procedure of extending the benefit of legislation to an improperly excluded class has been employed in sex discrimination cases. Moritz v. C. I. R., *supra;* People v. Ellis, *supra*. It is particularly appropriate to employ it in this case. The legislative determination in Idaho by 1971 was to accord adult status to all persons at age eighteen, regardless of sex. This is evidenced, *inter alia*, by the enactment by the 1971 Legislature of the Uniform Probate Code, I.C. §§ 15–1–101 to 15–7–401. Section 15–1–201(28) defines minors as males and females under eighteen years of age. Although the Uniform Probate Code did not go into effect until July 1, 1972, see S. L. 1971, ch. 111, p. 237, its enactment indicates the intent of the Legislature at the time of Dean Sallenger's death.

■■ Accordingly, we hold that at the time of his death, Dean Sallenger, being over the age of eighteen must be considered to have reached the age of majority, just as a young woman of twenty on that date would have been legally an adult. That being the case, the proper statute to apply in this case is the former version of I.C. § 5–311, which provided that the heirs of a person "not being a minor" were the proper parties to bring an action for that person's wrongful death.

The district court did not err in denying the motion of the petitioners to dismiss the plaintiffs' complaint for lack of jurisdiction.

The alternative writ is quashed, the writ of prohibition is denied, and the petition is dismissed. Costs to plaintiffs.

SHEPARD, McQUADE, McFADDEN and BAKES, JJ., concur.