(No. 44839.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. WALTER McCALVIN *et al.,* Appellants.

*Opinion filed October 1, 1973.*

162

GOLDENHERSH, J., specially concurring.

KENNETH L. GILLIS, Illinois Defender Project, and ROBERT E. DAVISON, Assistant District Defender, of Chicago, for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and BERNARD CAREY, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and JAMES S. VELDMAN, Assistant State's Attorney, and BERNARD ARMEL (senior law student), of counsel), for the People.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The defendants, Frank Morgan and Walter McCalvin, were found guilty of murder, burglary, and six counts of armed robbery, and not guilty of rape. The occurrences that gave rise to the charges all occurred on the night of April 12, 1970. The court imposed concurrent sentences of 5 to 15 years for burglary, 15 to 30 years on each of two counts of armed robbery, and 20 to 60 years on each of four counts of armed robbery. Morgan was sentenced to a term of 100 to 199 years for murder, and McCalvin to a term of 75 to 125 years for murder.

The record shows that the defendants entered an apartment hotel by climbing through a window adjacent to a telephone pole. They then forced their way at gunpoint into the apartment of the manager of the hotel. They kept the manager's wife captive while they searched the apartment, from which they took money and a rifle and

shotgun that belonged to the manager. When the manager arrived at his apartment, he too was robbed. He and his wife were forced to accompany the defendants to the main floor of the hotel, where the cashier was robbed, and then into the bar, where the patrons were robbed and one of them was shot and killed. Several witnesses identified the defendants, and their confessions were introduced in evidence.

On this appeal the defendants do not dispute that the evidence established their guilt beyond a reasonable doubt. They first assert, however, that they were deprived of a fair trial by reason of certain statements made by their respective attorneys to the trial judge out of the presence of the jury, and by the introduction into evidence of the blood-stained jacket which had been worn by the murder victim. They also contend that section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1969, ch. 37, par. 702—7) deprives them of equal protection of the law, and that the sentences imposed were excessive.

Before the jury was selected the attorneys for the defendants told the trial judge that each of them had advised his client to enter a plea of guilty. Subsequently, the defendant McCalvin testified in his own behalf, and before he did so his attorney told the trial judge, out of the presence of the jury, that he had advised his client not to take the witness stand. It is asserted that by reason of these occurrences a conflict of interest was created between the defendants and their attorneys, which requires that the convictions be reversed.

The defense attorneys had obtained discovery during the hearings on their motions to suppress the lineup identifications and the defendants' confessions. They had examined the transcript of the coroner's inquest, interviewed prosecution witnesses, and conducted other investigations. With this knowledge they conducted negotiations which resulted in an offer by the prosecution to waive the death penalty and to recommend the imposition of a single

concurrent sentence upon all the charges, if the defendants pleaded guilty. The concern of the attorneys that a record be made of their advice to their clients against the possibility of a post-conviction charge of incompetence is understandable.

The defendants' contention that the conduct of the attorneys in making a record in the manner that they did "created a conflict of interest which denied the defendants of the right to counsel" is based primarily upon the American Bar Association Standards Relating to the Defense Function which were approved after this case was tried. Standard 5.2(c) states "If a disagreement on significant matters of tactics or strategy arises between the lawyer and his client, the lawyer should make a record of the circumstances, his advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relation."

This Standard clearly recognizes that it is desirable that a record be made of a significant disagreement between the lawyer and his client. We agree that it would have been better if the attorneys' advice to their clients with respect to the plea of guilty had not been communicated to the trial judge but had been otherwise handled—perhaps in the method suggested in the Commentary: "A disagreement between counsel and the accused on a decision to be made before or during the trial may be the subject of post-conviction proceedings questioning the effectiveness of the lawyer's performance. Rather than leave the matter to be determined on the strength of the memories of the lawyer and client, which are invariably in conflict if the issue arises, some record should be made. This may be accomplished by a notation of the nature of the disagreement, the advice given, and the action taken, either in the lawyer's file or by letter to the client, depending upon the gravity of the problem." (Standards, pp. 240-241.) But because this precise method was not

followed we see no reason to conclude that a conflict existed between the defendants and their attorneys.

We reach the same result with respect to the objection based upon the fact that McCalvin's attorney told the trial judge that he had advised his client not to take the witness stand. The problem faced by a defense attorney in such a situation is dealt with in Standard 7.7 of the Standards Relating to the Defense Function and the Commentary to that Standard. The Commentary states: "Because the lawyer may later have his conduct called into question when his client testifies against the advice of counsel, it is desirable that a record be made of the fact. However, if the trial judge is informed of the situation, the defendant may be unduly prejudiced, especially at sentencing, and the lawyer may feel that he is caught in a dilemma between protecting himself by making such a record and prejudicing his client's case by making it with the court. The dilemma can be avoided in most instances by making the record in some other appropriate manner, for example, by having the defendant subscribe to a file notation, witnessed, if possible, by another lawyer." Standards, pp. 276-277.

Again it is possible to conclude, in the light of materials now available, that it would have been preferable to have followed a different method in recording the disagreement. But we are not persuaded that there was such a conflict of interest as would warrant reversal or that the defendants' right to a fair trial was prejudiced. An examination of the record discloses that both defendants were vigorously and competently represented.

The defendants' second contention concerns the blood-stained jacket worn by the deceased, which was identified and received in evidence during the prosecution's case in chief. At that time, however, the trial judge reserved his ruling as to whether the jacket would be shown to the jury. The defendant McCalvin testified that the fatal shot was not fired by one of the two defendants

but rather by a third person who fired from the doorway of the bar. Expert testimony was then offered in rebuttal by the prosecution to the effect that examination of the jacket revealed powder stains which indicated that the shot had been fired at close range. The jacket thus had significant probative value, and it was not error to receive it fully into evidence.

The next contention of the defendants is that they were denied equal protection of the law by section 2—7 of the Juvenile Court Act, which provided:

> "(1) Except as provided in this Section, no boy who was under 17 years of age or girl who was under 18 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State or for violation of an ordinance of any political subdivision thereof.
>
> \* \* \*
>
> (3) If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, the State's Attorney shall determine the court in which that minor is to be prosecuted; however, if the Juvenile Court Judge objects to the removal of a case from the jurisdiction of the Juvenile Court, the matter shall be referred to the chief judge of the circuit for decision and disposition. If criminal proceedings are instituted, the petition shall be dismissed insofar as the act or acts involved in the criminal proceedings are concerned. \*\*\*" Ill. Rev. Stat. 1969, ch. 37, par. 702—7.

At the time these offenses were committed, the defendant McCalvin was 15 days short of 18 years of age and the defendant Morgan was 21 days short of that age. The argument of the defendants is that because the statute afforded 17-year-old girls a potential procedural protection not accorded to 17-year-old boys, they were denied equal protection of the law.

By the statute in effect at the time of these offenses, the legislature had given the State's Attorney the duty to decide, in the first instance, whether or not a minor believed to be guilty of a violation of the law was to be

prosecuted criminally. His decision was final unless, in the case of boys under 17 and girls under 18, the juvenile court judge objected to a criminal prosecution. In the event of such an objection "the matter shall be referred to the chief judge of the circuit for decision and disposition." These administrative and judicial decisions were not made upon the basis of age and sex alone. Many other factors were taken into account, such as the nature of the offense charged, the previous behavior of the minor, the possibilities of rehabilitation and, in general, the best interests of the minor and the safety of the public. Those considerations, always implicit in the statute, have now been made explicit. (See, Ill. Rev. Stat., 1972 Supp., ch. 37, par. 702—7.) We do not have in this statutory scheme, therefore, a discrimination based upon sex alone, as was the case in *Reed v. Reed (1971), 404 U.S. 71, 30 L. Ed. 2d 225, 92 S. Ct. 251,* and *Frontiero v. Richardson (1973), 411 U.S. 677, 36 L. Ed. 2d 583, 93 S. Ct. 1764.*

The line that the statute formerly drew between those minors who were to be prosecuted criminally and those who might be retained within the jurisdiction of the juvenile court cannot, in our opinion, be fairly described as a "suspect classification." No evidence was introduced by either defense or prosecution in opposition to or in support of the statutory classification. In the present case it cannot be supposed that any State's Attorney, confronted with similar crimes of violence allegedly committed by 17-year-old girls, would have failed to decide to prosecute criminally, or that any judge would have interfered with that decision. We therefore hold that section 2—7 of the Juvenile Court Act did not violate the equal-protection clause. We adhere to the conclusion we reached in *People v. Pardo (1970), 47 Ill.2d 420, appeal dismissed for want of a substantial Federal question, Pardo v. Illinois (1971), 402 U.S. 992, 29 L. Ed. 2d 158, 91 S. Ct. 2179.*

We are aware that a similar Oklahoma statute has been held invalid by the United States Court of Appeals for the

10th Circuit (*Lamb v. Brown (1972), 456 F.2d 18;* see also, *Schaffer v. Green (Okla. Crim. 1972), 496 P.2d 375*), and that one of our own appellate courts has reached a similar result. (*People v. Ellis (1973), 10 Ill. App. 3d 216.*) We are also aware that the General Assembly has, by a statute effective January 1, 1973, eliminated the age differential which gave rise to the defendants' claim. (Ill. Rev. Stat., 1972 Supp., ch. 37, par. 702—7.) We are not persuaded, however, that section 2—7 can be said to have violated the equal-protection clause.

For the reasons stated, the judgment of conviction is affirmed. The sentences imposed, however, are not in accordance with the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1), and the cause is remanded to the circuit court of Cook County for sentencing in accordance with the provisions of that act.

*Affirmed and remanded.*

MR. JUSTICE GOLDENHERSH, specially concurring:

For reasons adequately stated in the opinion of the appellate court in *People v. Ellis, 10 Ill. App. 3d 216,* I would hold that the provisions of section 2—7(1) of the Juvenile Court Act are violative of section 18 of article 1 of the constitution of 1970. The record shows, however, that these defendants were tried, convicted and sentenced prior to the effective date of the constitution of 1970. Under these circumstances there is no basis for retroactive application and I concur in the decision to affirm the judgments and remand the cause for resentencing.