Commonwealth ex rel. Hendrickson, Appellant, *v.* Pennsylvania State Board of Parole.

Argued May 2, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Norman A. Oshtry,* for appellant.

*Frank P. Lawley, Jr.,* Deputy Attorney General, with him *David Stahl,* Attorney General, for appellee.

OPINION BY MR. JUSTICE EAGEN, November 13, 1962:

This is an appeal from an order in the court below denying judgment on the pleadings in an action of mandamus. The record discloses the following facts.

In 1952, appellant, Robert Hendrickson, was convicted of burglary and larceny and sentenced to the Philadelphia County Prison for a term of not less than three years nor more than fifteen years. Five years later, appellant was released on parole by appellee, the Pennsylvania State Board of Parole (Board).

While on parole, appellant, in violation of the conditions of the parole, moved from his approved residence to the home of a woman, not his wife, and thereafter failed to report to his parole agent as required by law. He was subsequently taken into custody by agents of the Board and the Philadelphia Police. The day appellant was apprehended, he was interviewed by an agent of the Board who orally informed him of his parole violations.

Appellant was confined in the Philadelphia County Prison on charges of technical parole violation under the provisions of the Act of August 6, 1941, P. L. 861, as amended, 61 P.S. §331.21a, and declared delinquent by the Board. Approximately six weeks after he was arrested, appellant had a hearing before a member of the Board at which, for the first time, he was formally informed of the six specific charges of parole violation which had resulted in his apprehension by the authorities. At the hearing, appellant *admitted the parole violations* and the Board formally recommitted him to prison.

After his petition for a writ of habeas corpus was denied and the judgment affirmed by the Superior Court, *Commonwealth ex rel. Hendrickson v. Hendrick,* 193 Pa. Superior Ct. 559, 165 A. 2d 261 (1960), appel-

lant filed a complaint in mandamus in the court below challenging the legal adequacy of the actions of the Board in ordering his recommitment. In particular, he contends that he was not given a "hearing" within the meaning of the Act of 1941. The court below sitting en banc dismissed appellant's motion for judgment on the pleadings. This appeal followed.

Although we question the propriety of appellant's having brought his action in mandamus, we shall not dispose of the appeal on this ground because of the important substantive issue raised. For the proper function of mandamus, see *Highway Paving Company v. Board of Arb. of Claims,* 407 Pa. 528, 180 A. 2d 896 (1962).

Turning now to the merits of the appeal, the relevant part of Section 331.21a of the Act of 1941 provides: "(b) Technical Violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution in the Commonwealth who, during the period of parole, violates the terms and conditions of his parole . . . may be recommitted after hearing before the board . . . ." (61 P.S. §331.21a).

Appellant contends that the hearing procedure contemplated by the legislative enactment must comply with the provisions of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, 71 P.S. §§1710.1-1710.51, and is quasi-judicial in character. This position is not correct.

Initially, it must be noted that the Board is not one of the agencies specifically designated in Section 51 of of the Administrative Agency Law (71 P.S. §1710.51), nor does it come within any of the other provisions. It is not, therefore, subject to the procedural requirements of the act regarding the conduct of a hearing. This is properly so since a hearing before the Board is not analogous to a quasi-judicial hearing before, e.g., the

Public Utility Commission or the Unemployment Compensation Board of Review. The latter agencies involve individual parties and are "empowered to determine or affect private rights, privileges, immunities, or obligations by regulation or adjudication."

A parole revocation hearing is not of this nature. A person having been granted his conditional freedom on parole, the sole question before the Board is whether the parolee is still a good parole risk. It is not a trial, nor indeed is it primarily concerned with the commission of an offense. *Hock v. Hagan,* 190 F. Supp. 749 (1960). The purpose of a parole hearing is as much to form a part of the rehabilitation process as to provide a check on the administrative decision, already tentatively made, that the conditions of release were violated. *Lopez v. Madigan,* 174 F. Supp. 919 (1959).

Such a view is consistent with the public policy as to parole set forth by the legislature. The first section of the Act of 1941 provides: "The value of parole as a disciplinary and corrective influence and process is hereby recognized and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration . . . ." (61 P.S. §331.1).

The parole of a prisoner at the expiration of his minimum term is not a matter of right. Rather, it is a matter of grace and mercy, and the granting, reinstatement and revocation of parole is within the exclusive jurisdiction of the Board. Parole is first and foremost a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls. The prisoner on parole

is still in the legal custody of the state through the warden of the institution from which he was paroled, and is under the control of the warden and of other agents of the Commonwealth until expiration of the term of his sentence. *Commonwealth ex rel. Sparks v. Russell,* 403 Pa. 320, 169 A. 2d 884 (1961). See also, Epstein, A Survey of the Law of Probation and Parole in Pennsylvania, 30 Temple L.Q. 309 (1957). Accordingly, the matter of whether a prisoner is a good risk for release on parole or has shown himself not to be a good risk is a disciplinary matter which by its very nature must be left in the hands of those charged with the responsibility for deciding the question. *Washington v. Hagan,* 287 F. 2d 332 (1960).

For these reasons the Supreme Court of the United States has taken the position that one on parole has no constitutional right to a hearing prior to the revocation of parole, and that whatever right exists in a particular jurisdiction derives solely from the existence of statutory provisions requiring a hearing. *Escoe v. Zerbst,* 295 U. S. 490, 79 L. Ed. 1566, 55 S. Ct. 818 (1935). Since, therefore, the legislature in this Commonwealth has determined that a parolee who commits a technical violation can be recommitted only after a hearing, a parolee is entitled to a hearing as a matter of right. The hearing procedure, however, is only as extensive as the legislature intended to make it. We are called upon here to interpret the legislative mandate.

While Section 331.21a of the Act of 1941, does not set forth the requirements of a revocation hearing, Section 331.22 is helpful in ascertaining the intention of the legislature. This provides, inter alia, that: "In granting and revoking paroles, and in discharging from parole, the members of the board acting thereon shall not be required to personally hear or see all the witnesses and evidence submitted to them for their

action, but they may act on report submitted to them by their agents and employes, together with any pertinent and adequate information furnished to them by fellow members of the board or by others." (61 P.S. §331.22).

From the above language, it is apparent that the legislature did not intend that the Board should be required to hold a formal hearing with proceedings which are quasi-judicial in character. Indeed, the only person whom the Board is actually required to hear under the Act of 1941 is the parolee. All other information and evidence may be brought to the attention of the Board as a result of a report prepared by its agents or employees. Accordingly, the hearing need only be summary in character. See Annot. 29 A.L.R. 2d 1074 (1953).

Appellant further contends that he was not given adequate prior notice of the charges placed against him which deprived him of a fair opportunity to defend. The record patently manifests that this is just not so.

When appellant was first apprehended for the serious parole violations involved, he was immediately specifically informed of the nature of the charges for which he was called upon to answer. Six weeks then passed before he was called before a member of the Board to explain his conduct. Upon being again informed that the Board had evidence tending to prove that he had violated six different rules of his parole agreement, he readily admitted his transgressions. Not a semblance of a denial was offered. There was no request for an opportunity to be further heard or to present any testimony in explanation or extenuation of his conduct. Under such circumstances, his present complaint of inadequate notice is hollow and devoid of merit.

Order affirmed.

Mr. Justice MUSMANNO dissents.

DISSENTING OPINION BY MR. JUSTICE COHEN :

I am in complete agreement and accord with the conclusion of the majority that the hearing required in the revoking of a parole need only be summary in character. This does not mean, however, that appellant or any similarly situated parolee is without rights. Since a technical parole violator is given credit only for the time that he serves on parole in good standing and receives no credit for time during which he is delinquent, he is in effect serving double time for the period during which he is delinquent. The period of delinquency is added to the time he must serve until his sentence is completed.

In order to assure that a parolee is penalized by this form of double sentence for only the actual period of his delinquency, the Pennsylvania State Board of Parole (Board) must provide him with written notice of the nature and time of the alleged parole violation a reasonable time before the hearing. Without formal notification of this nature, a parolee is in essence being required to prepare a full justification of every action and an accounting for every minute spent on parole. See Notes, 65 Harv. L.R. 309 (1951). Notice enables the parolee to prepare adequately to meet the contentions of the Board and thereby avoid the imposition of any unwarranted increase in the time which he must serve.

In the instant case appellant was not given any formal notification of the nature or time of the alleged parole violations which resulted in his being taken into custody. The fact that his parole agent had an interview with him subsequent to his arrest and informally told him of the reasons for his apprehension does not satisfy the requirement of formal notification. Board may have added to or changed the formal charges against appellant at the hearing. Board's failure to provide this normal procedural safeguard was error.

While we thoroughly agree with the majority's position that revocation hearings should be informal, we do not equate informality with the right to confront a parolee with the charges against him for the first time at the very hearing at which he is attempting to exonerate himself.

Accordingly, since appellant never received prior *formal* notice of either the nature of his violations or of the time of their occurrence, he is now entitled to a new hearing within a reasonable time after receipt of such notice.