**Charlene BENNETT and Carol Nofen, Plaintiffs,**

v.

**DYER'S CHOP HOUSE, INC., Defendant.**

**Civ. No. C 72-107.**

United States District Court,
N. D. Ohio, W. D.

Oct. 26, 1972.

James M. Klein, Toledo, Ohio, for plaintiffs.

John O. Celusta, Toledo, Ohio, for defendant.

## MEMORANDUM

DON J. YOUNG, District Judge:

This cause came to be heard upon motion of plaintiffs for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The facts are not in dispute.

Defendant, Dyer's Chop House, Inc. (hereinafter Dyer's), has been incorporated under the laws of the State of Ohio since 1931. The restaurant is open for business every day except Sundays and holidays from 11:00 a. m. to 11:00 p. m. The defendant serves food and has obtained liquor permits from the Ohio Department of Liquor Control to sell alcoholic beverages. The defendant has been operating pursuant to the State of Ohio's Liquor Control permits from 1934. Since approximately 1932, the defendant has operated under a policy to exclude all female patrons from the bar and restaurant from 11:00 a. m. to 1:30 p. m., Monday through Friday. Female patrons are served both food and drink at all other times the defendant is open for business, and the defendant employs waitresses, not waiters, to serve its patrons. Plaintiffs, two women, entered Dyer's at approximately 11:30 a. m. on February 11, 1972, in order to be served both food and drink. Plaintiffs were refused service pursuant to the above stated policy of the defendant. As a result of defendant's refusal to serve plaintiffs and defendant's continual enforcement of the policy concerning female patrons, plaintiffs commenced this action pursuant to 42 U. S.C. § 1983, seeking both a declaratory judgment that defendant's policy is discriminating and unconstitutional and also money damages. There being no dispute as to the facts, the sole issue of the case is whether the defendant by enforcement of its policy regarding women is acting under color of state

law and if such refusal of service denied plaintiffs the equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

## I.

It is an established principle dating back to the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), that "the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful," Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1947). The United States Supreme Court has gradually expanded the concept of state action to include many areas that were once thought to be private in nature. In Shelley v. Kraemer, *supra,* the Supreme Court held that although the covenant among white homeowners not to sell their property to blacks was private, the ultimate enforcement by state courts to constrain owners who may wish to sell to blacks in spite of the convenant was sufficient to establish state action. More recently, state action has been found where a restaurant premises was located in a building maintained by the state and used to operate a public parking service even though the restaurant was privately leased and operated. Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

■ If state action is to be proven in this case it must be on the basis of the control exerted by the State of Ohio through its Department of Liquor Control and the relationship between the defendant and this Department. Ohio Rev. Code § 4301.022. The Department of Liquor Control oversees every aspect of the sale of alcoholic beverages within the State of Ohio beginning with the

transportation of liquor into the State,[1] its management of State liquor stores,[2] its power to grant or refuse permits to sell alcoholic beverages,[3] and its enforcement of the rules and regulations of the Ohio Liquor Commission and the penal laws relating to these regulations.[4] The Ohio Supreme Court has recognized the State's exclusive control in this area holding that once a person has obtained a permit to sell liquor that he is:

> thereafter subject to strict regulation by statute and by rules and regulations adopted and promulgated pursuant to statutory authority by the Department of Liquor Control, the regulating and supervising agency created by the state to oversee and police . . . the liquor business. Solomon v. Liquor Control Comm., 4 Ohio St.2d 31, 34, 212 N.E. 2d 595, 598 (1965).

State action, in this case, is not derived solely from the licensing power of the Liquor Control Commission. If it were then this Court would find itself with a matter that has never been directly decided by the United States Supreme Court, although two Justices have expressed conflicting views on the matter. *Compare* Reitman v. Mulkey, 387 U.S. 369, 384–386, 87 S.Ct. 1627, 18 L. Ed.2d 830 (1967) (Douglas, J. concurring), *with* Bell v. Maryland, 378 U.S. 226, 326–335, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964) (Black, J. dissenting). Rather the recipient of a liquor license derives economic benefit from the state, in that the number of permits issued is dependent on the population of the municipality, Ohio Rev.Code § 4303.29 and no one may sell alcoholic beverages without a permit. Therefore the competition faced by permit holders is severely restricted by the operation of the Liquor Control Board. In Seidenberg v. McSorleys' Old Ale House, Inc., 317 F.Supp. 593 (S.D.N.Y.1970), a case on all fours with the present case before

---

1. Ohio Rev.Code § 4301.10(A)(1).

2. Ohio Rev.Code § 4301.10(A)(3).

3. Ohio Rev.Code § 4301.10(A)(2).

4. Ohio Rev.Code § 4301.10(A)(4).

this Court, a federal district court in New York came to the same conclusion and held that:

> the licensing practices of the (State Liquor Authority) . . . operate to restrict competition between vendors of alcoholic beverages, thus conferring on license holders, a significant state-derived economic benefit approximating the state support provided by the lease involved in Burton v. Wilmington Parking Authority . . . *Id.* at 603.

This Court concurs with the holding in the *McSorleys'* case and finds that the defendant is operating under color of law due to the licensing arrangement it has with the Ohio State Department of Liquor Control. Once a defendant is acting under color of law he is bound to follow the proscriptions of the United States Constitution including the Equal Protection Clause of the Fourteenth Amendment.

This conclusion is not contrary to the holding of Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), a recent United States Supreme Court decision in which a private club operating under a private club liquor license was allowed to continue its discriminatory practices. In that case, the Supreme Court based its decision on the fact that:

> Moose Lodge is a private club in the ordinary meaning of that term. It is a local chapter of a national fraternal organization having well defined requirements for membership. It conducts all of its activities in a building that is owned by it. It is not publicly funded. Only members and guests are permitted in any lodge of the order; one may become a guest only by invitation of a member or upon invitation of the house committee. *Id.* at 171, 92 S.Ct. at 1970.

Dyer's is not a club as defined in Irvis, *id.* Rather it is a corporation for prof-

it, incorporated under the laws of the State of Ohio and open to the public during all of its business hours. This Court finds that *Irvis* is limited to a holding based on its particular facts and the case before this Court is clearly distinguishable on its facts.

## II.

■ This Court now turns to the issue of whether the practice of the defendant does in fact deny plaintiffs the equal protection of laws.

The Fourteenth Amendment does not prohibit all discrimination based on classification even where there is state action. In the economic area, if the classification bears a rational relationship to the valid state purpose it is attempting to achieve, the classification will not be disturbed. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed. 2d 491 (1970); McDonald v. Board of Election Commissioners, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Even in the area of fundamental rights a classification will not be disturbed when the state meets the greater burden of establishing not only that it has a compelling interest which justifies the classification but that the distinctions drawn are necessary to further its valid purpose. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

Initially the Court will examine if the defendant can show a rational basis for excluding women as potential customers during certain hours of the day. This is not the first time a federal court has been asked to determine whether women can be denied the same rights as men solely on the basis of their sex. In recent cases, federal courts have failed to

find any rational basis in excluding women from jury service, White v. Crook, 251 F.Supp. 401 (M.D.Ala.1966), prohibiting women the right to sue for loss of consortium, Karczewski v. Baltimore & O. R.R. Co., 274 F.Supp. 169 (N.D.Ill.1967), allowing men to be preferred over women when persons of the same entitlement class applied for appointment as administrator of a defendant's estate, Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), and denying women accommodations in public restaurants, Seidenberg v. McSorleys' Old Ale House, *supra*. As in the above cited cases, this Court also fails to find any rational basis to uphold the defendant's policy of excluding women from its premises. The obvious fact that women are not men is not sufficient justification. Defendant holds itself out as a public facility. That being so, then it must be in fact public. It cannot exclude women during certain hours and permit them service during others. This only adds to the irrationality of an already irrational basis of classification. As long as women are denied access to this public facility, no matter how small a period it is in relationship to the period in which they are permitted access, they are being denied the equal protection of the laws as proscribed by the Fourteenth Amendment of the United States Constitution.

Since this Court finds a violation of plaintiffs' equal protection rights under the less restrictive "rational basis" test it is not necessary for this Court to examine whether the plaintiffs would be successful under the more restrictive "compelling interest" test, the requirements of which are more favorable to the plaintiffs.

Plaintiffs also seek damages in the amount of $3,000.00 per plaintiff for defendant's violation of their constitutional rights. This Court cannot determine the amount of damages, if any, on the basis of the evidence before it at this time.