Commonwealth *v.* Butler, Appellant.

Argued April 25, 1974. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Richard D. James, Ronald J. Mishkin* and *Soren P. West,* Public Defenders, for appellant.

*Benjamin Lerner,* Deputy Attorney General, with him *C. Daniel Higgins,* Assistant District Attorney, and *James F. Marsh,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, October 16, 1974:

This case presents a significant question of the facial constitutionality of the legislative response to our decision in *Commonwealth v. Daniel,* 430 Pa. 642, 243 A.2d 400 (1968). We agree with appellant that the Commonwealth's sentencing statutes—the Act of 1911 and the so-called new Muncy Act—by their joint operation are constitutionally impermissible. We disagree, however, that the Act of 1911 must be struck down. Instead, we hold unconstitutional that portion of the new Muncy Act directing that no minimum sentence be imposed on women convicted of crime. Because the constitutionally-offensive part of the statutory scheme has been declared invalid, we affirm appellant's judgment of sentence.[1]

Appellant on April 9, 1971, pleaded guilty to murder generally and was convicted of murder in the second degree. The court assessed punishment at ten to twenty years imprisonment and a $1,000 fine. This appeal ensued.[2]

Appellant's sole challenge is to the constitutionality of the legislative choice to prescribe that all men receive minimum sentences and that all women not be given minimum sentences. An understanding of this Commonwealth's sentencing scheme is necessary.

---

[1] The Attorney General of Pennsylvania in an amicus curiae brief takes the position that the Act of 1911 and the new Muncy Act, working together, are unconstitutional, that only that part of the new Muncy Act proscribing minimum sentences for women should be invalidated, and that appellant's judgment of sentence should be affirmed.

[2] Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp. 1974).

In 1911, the Legislature enacted a general sentencing statute. Act of June 19, 1911, P.L. 1055, §§ 1-6, as amended, 19 P.S. §§ 1051-57 (1964). Section 6 of that act provided that any person convicted of a crime[3] was to be sentenced to an indeterminate sentence. 19 P.S. § 1057 (1964).[4] Trial courts were further instruct-

---

[3] All references in this opinion to persons convicted of crime shoud be considered to exclude from their scope the statutory exception for sentences imposed for crimes punishable by simple imprisonment.

The Act of 1911 applies only to persons "convicted in any court of this Commonwealth of any crime punishable by imprisonment in a State penitentiary . . . ." Act of June 19, 1911, P.L. 1055, § 6, as amended, 19 P.S. § 1057 (1964). Trial courts retain the discretion "[w]henever any person is convicted of any crime punishable by simple imprisonment" to fix sentence for a fixed or indeterminate period. Id.

[4] Section 1057 provides in full:

"Whenever any person, convicted in any court of this Commonwealth of any crime punishable by imprisonment in a State penitentiary, shall be sentenced to imprisonment therefor in any penitentiary or other institution of this State, or in any county or municipal institution, the court, instead of pronouncing upon such convict a definite or fixed term of imprisonment, shall pronounce upon such convict a sentence of imprisonment for an indefinite term: Stating in such sentence the minimum and maximum limits thereof; and the maximum limit shall never exceed the maximum time now or hereafter prescribed as a penalty for such offense; and the minimum limit shall never exceed one-half of the maximum sentence prescribed by any court.

"Whenever any person is convicted of any crime punishable by simple imprisonment, the court, may in its discretion, pronounce a sentence either for a fixed term or for an indefinite term, as may seem proper under the circumstances of the case, but in no case to exceed the maximum term prescribed by law as a penalty for such offense:

"Provided, That nothing herein contained shall be construed to derogate from the power of the judges of the courts of quarter sessions and of the courts of oyer and terminer, or other court of record having jurisdiction, of the several judicial districts of the Commonwealth, after due inquiry, to release on parole any convict

ed by section 6 to "[s]tat[e] in such sentence the minimum and maximum limits thereof . . . and the minimum limit shall never exceed one-half of the maximum sentence prescribed by any court." Id. A few years later an exception to this general sentencing statute was carved out by the original Muncy Act. Act of July 25, 1913, P.L. 1311, §§ 7-26, as amended, 61 P.S. §§ 551-91 (1964). When it came to women convicted of crime, trial courts were to sentence them to the State Correctional Institution at Muncy.[5] Act of July 25, 1913, P.L.

confined in the county jail, house of correction, or workhouse of their respective districts, as provided in section one of an act, approved the nineteenth day of June, one thousand nine hundred and eleven (Pamphlet Laws, one thousand fifty-nine), entitled 'An act extending the powers of judges of courts of quarter sessions and of oyer and terminer, in relation to releasing prisoners in jail and workhouses on parole,' [61 P.S. § 314 (1964)] its amendments and supplements: And provided further, That no person sentenced for an indeterminative term shall be entitled to any benefits under the act, entitled 'An act providing for the commutation of sentences for good behavior of convicts in prisons, penitentiaries, workhouses, and county jails in this State, and regulations governing the same,' approved the eleventh day of May, Anno Domini one thousand nine hundred and one [repealed by Act of July 23, 1965, P.L. 244, § 1]:

"And provided further, That, before any parole shall be granted pursuant to the terms hereof, notice of an intention so to do shall be given, at least ten days prior thereto, by the board of prison inspectors to the judge of the county who imposed the sentence, if he be still in office, but otherwise to the judge or judges of the court of oyer and terminer or the court of quarter sessions then in session, or if there be no current term, then to the next ensuing term thereof, and having jurisdiction of cases of the like character. Similar notice shall also be given to the district attorney then in office in said county." Act of June 19, 1911, P.L. 1055, § 6, as amended, 19 P.S. § 1057 (1964) (footnotes omitted).

[5] The Muncy prison was formerly named the State Industrial Home for Women. See Act of October 22, 1959, P.L. 1356, § 1, 71 P.S. § 62 (Supp. 1974) (amending Act of April 9, 1929, P.L. 177, 189, art. II, § 202). See also 71 P.S. § 301 (Supp. 1974).

1311, § 15, as amended. According to the original Muncy Act, "Every sentence imposed pursuant to this act shall be merely a general one . . . and shall not fix or limit the duration thereof." Id.[6]

This disparate treatment of men and women went unchallenged until 1966, when Jane Daniel, on appeal from a robbery conviction, contended that the sentencing scheme was unconstitutional. More particularly, she argued that the failure to fix maximum sentences for women convicted of crime coupled with the requirement that men convicted of crime receive a minimum and a maximum denied her the equal protection of the laws. This Court agreed and on July 1, 1968, declared unconstitutional that portion of the Muncy Act requiring that women not be given a maximum sentence. *Commonwealth v. Daniel*, 430 Pa. 642, 243 A.2d 400 (1968).

---

[6] The complete text of section 15 of the Act of 1913, P.L. 1311, as amended (footnote omitted), states: "Any court of record in this Commonwealth, exercising criminal jurisdiction, may, in its discretion, sentence to the State Industrial Home for Women any female over sixteen years of age, upon conviction for, or upon pleading guilty of, the commission of any criminal offense punishable under the laws of this State. After due notice given to all courts of record exercising criminal jurisdiction in this Commonwealth by the board of trustees of said State Industrial Home for Women that the said home is prepared to receive all women so convicted or pleading guilty of an offense punishable by imprisonment for more than a year who shall be sentenced to imprisonment, such sentence in all cases shall be to confinement in said State Industrial Home for Women. Every sentence imposed pursuant to this act shall be merely a general one to the State Industrial Home for Women, and shall not fix or limit the duration thereof. The duration of such imprisonment, including the time spent on parole, shall not exceed three years, except where the maximum term specified by law for the crime for which the prisoner was sentenced shall exceed that period, in which event such maximum term, including the time spent on parole, shall be the limit of detention under the provisions of this act."

On July 16, 1968, the Legislature passed a bill to replace that part of the Muncy Act held invalid in *Daniel.* Act of July 16, 1968, P.L. 349, § 1, 61 P.S. § 566 (Supp. 1974). Under this new Muncy Act, women are to receive maximum sentences. However, "[t]he court in imposing sentence shall not fix a minimum sentence . . . ." Id.[7] It is the constitutionality of the proscription of minimum sentences for female offenders that is here challenged.

The significance of minimum sentences arises in connection with eligibility for parole. See generally Act of August 6, 1941, P.L. 861, §§ 1-34, as amended, 61 P.S. §§ 331.1—331.34 (Supp. 1974). Responsibility for determining when to release a person on parole is vested in the Board of Parole. 61 P.S. § 331.17 (Supp. 1974).[8] No person who has received a minimum sen-

---

[7] The new Muncy Act provides in full: "Any court of record in this Commonwealth, exercising criminal jurisdiction, may, in its discretion, sentence to the State Industrial Home for Woman [sic] any female over sixteen years of age, upon conviction for, or upon pleading guilty of, the commission of any criminal offense punishable under the laws of this State. After due notice given to all courts of record exercising criminal jurisdiction in this Commonwealth by the board of trustees of said State Industrial Home for Women that the said home is prepared to receive all women so convicted or pleading guilty of an offense punishable by imprisonment for more than a year who shall be sentenced to imprisonment, such sentence in all cases shall be to confinement in said State Industrial Home for Women. The court in imposing sentence shall not fix a minimum sentence, but shall fix such maximum sentence as the court shall deem appropriate, so long as such maximum sentence does not exceed the maximum term specified by law for the crime for which the prisoner is being sentenced." Act of July 16, 1968, P.L. 349, § 1, 61 P.S. § 566 (Supp. 1974).

[8] This section in its entirety is set forth below: "The board shall have exclusive power to parole and reparole, commit and recommit for violations of parole, and to discharge from parole all persons heretofore or hereafter sentenced by any court in this Commonwealth to imprisonment in any prison or penal institution thereof, whether the same be a state or county penitentiary, prison

tence may be considered for parole prior to the expiration of that minimum sentence. Id. § 331.21 (1964). In other words, a minimum sentence serves to notify the Board when it may exercise its discretion to parole an individual. Cf. *Commonwealth ex rel. Hendrickson v. Pennsylvania State Board of Parole,* 409 Pa. 204, 207-08, 185 A.2d 581, 584 (1962), cert. denied, 374 U.S. 817, 83 S. Ct. 1713 (1963). See also *Commonwealth v. Tinson,* 433 Pa. 328, 249 A.2d 549 (1969). Women, as we have seen, receive no minimum sentence and are accordingly eligible for parole immediately upon incarceration at Muncy. 61 P.S. §§ 331.21, 331.31 (1964).

---

or penal institution, as hereinafter provided. It is further provided that the board shall have exclusive power to supervise any person hereafter placed on parole (when sentenced to a maximum period of less than two years) by any judge of a court having criminal jurisdiction, when the court may by special order direct supervision by the board, in which case the parole case shall be known as a special case and the authority of the board with regard thereto shall be the same as herein provided with regard to parole cases within one of the classifications above set forth: Provided, however, That, except for such special cases, the powers and duties herein conferred shall not extend to persons sentenced for a maximum period of less than two years, and nothing herein contained shall prevent any court of this Commonwealth from paroling any person sentenced by it for a maximum period of less than two years: And provided further, That the period of two years herein referred to shall mean the entire continuous term of sentence to which a person is subject, whether the same be by one or more sentences, either to simple imprisonment or to an indeterminate imprisonment at hard labor, as now or hereafter authorized by law to be imposed for criminal offenses. The power of the board to parole shall extend to prisoners sentenced to definite or flat sentences." Act of August 6, 1941, P.L. 861, § 17, as amended, 61 P.S. § 331.17 (Supp. 1974).

It should be specifically noted that except in cases where a trial court directs the Board of Parole to take jurisdiction, the Board has no authority over persons sentenced to less than two years imprisonment. That discretion is reposed in trial judges. See note 3 supra.

See *Commonwealth v. Daniel*, 430 Pa. at 647 n.*, 243 A.2d at 402 n.6. Since men alone are sentenced under section 1057, and therefore only men receive minimum sentences, section 331.21's limitation on eligibility for parole applies solely to males convicted of crimes.

On May 18, 1971, the voters of this Commonwealth adopted an equal rights amendment to our Constitution. Article I, section 28 provides: "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." That the purpose of this constitutional provision was to end discriminatory treatment on account of sex is clear. See generally L. Kanowitz, Sex Roles in Law and Society (1973); Brown, Emerson, Falk, & Freedman, The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women, 80 Yale L.J. 871 (1971). In this Commonwealth, sex may no longer be accepted as an exclusive classifying tool. In the recent past, we have unhesitatingly accepted the mandate of Article I, section 28. *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974).[9] We will not hesitate here.

The statutory scheme on its face treats men less favorably than women. Few interests are more sub-

---

[9] In *Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974), this Court concluded that the presumption that the male parent was primarily responsible for the support of a minor child was inconsistent with the equal rights amendment to the Pennsylvania Constitution. "We hold that insofar as [earlier] decisions suggest a presumption that the father, solely because of his sex and without regard to the actual circumstances of the parties, must accept the principal burden of financial support of minor children, they may no longer be followed. Such a presumption is clearly a vestige of the past and incompatible with the present recognition of equality of the sexes. The law must not be reluctant to remain abreast with the developments of society and should unhesitatingly discard former doctrines that embody concepts that have since been discredited." Id. at 539, 318 A.2d at 326.

stantial than freedom from lawfully-imposed confinement.[10] See *State v. Chambers,* 63 N.J. 287, 296, 307 A.2d 78, 82 (1973); *United States ex rel. Robinson v. York,* 281 F. Supp. 8, 16 (D. Conn. 1968). Indeed, parole is a fundamental public policy of this Commonwealth. 61 P.S. § 331.1 (1964). Parole may mean an opportunity to start anew in society, and may be a determinative step in a person's "rehabilitation, adjustment and restoration to social and economic life." Id.[11]

---

[10] The Supreme Court of the United States has regularly shown a special solicitude for interests touching on the defense of criminal cases and imprisonment. See, e.g., *Tate v. Short,* 401 U.S. 395, 91 S. Ct. 668 (1971); *Williams v. Illinois,* 399 U.S. 235, 90 S. Ct. 2018 (1970); *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963); *Griffin v. Illinois,* 351 U.S. 12, 76 S. Ct. 585 (1956). But see *Ross v. Moffit,* 417 U.S. 600, 94 S. Ct. 2437 (1974).

[11] In *Morrissey v. Brewer,* 408 U.S. 471, 92 S. Ct. 2593 (1972), the Supreme Court of the United States recognized the importance of parole to a correctional system. "During the past 60 years, the practice of releasing prisoners on parole before the end of their sentences has become an integral part of the penological system. . . . Rather than being an *ad hoc* exercise of clemency, parole is an established variation on imprisonment of convicted criminals. Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. It also serves to alleviate the costs to society of keeping an individual in prison. The essence of parole in release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. Under some systems, parole is granted automatically after the service of a certain portion of a prison term. Under others, parole is granted by the discretionary action of a board, which evaluates an array of information about a prisoner and makes a prediction whether he is ready to reintegrate into society." Id. at 477-78, 92 S. Ct. at 2598 (footnote & citation omitted). See ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures (Approved Draft, 1968); cf. *Raine v. Beckstead,* 10 Utah 2d 4, 347 P.2d 554 (1959). See generally Comment, The Parole System, 120 U. Pa. L. Rev. 282 (1971).

That one person (assuming equality of considerations as, for example, prior criminal record or rehabilitative progress) should be eligible for parole at a different time than another person solely because of his or her sex is discrimination of the most obvious sort.[12] We perceive no basis, let alone a rational basis, for predicating eligibility for parole on a person's sex.[13] The discrimination between men and women envisioned by the joint operation of the Act of 1911[14] and the new Muncy Act[15] with respect to minimum sentences therefore violates article I, section 28 of the Pennsylvania Constitution.

We are buttressed in our conclusion by cases interpreting the equal protection clause in the context of sexual discrimination.[16] Chief among these is our own

---

[12] An argument may be made that the existence of pre-release centers and work release plans in practical effect cures the discriminatory treatment of men and women in regard to parole eligibility caused by the joint operation of the new Muncy Act and the Act of 1911. See Act of July 16, 1968, P.L. 351, §§ 1-4, 61 P.S. §§ 1051-54 (Supp. 1974). Suffice it to say that parole and pre-release are not one and the same and that the real question is whether lines drawn by the Legislature in conferring a benefit (here, parole eligibility) are constitutionally permissible.

[13] It makes no difference to our conclusion whether parole eligibility is considered a right or a privilege. As the United States Supreme Court has observed, "But this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.' " Graham v. Richardson, 403 U.S. 365, 374, 91 S. Ct. 1848, 1853 (1971). See also Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600 (1972); Bell v. Burson, 402 U.S. 535, 539, 91 S. Ct. 1586, 1589 (1971). See generally Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv. L. Rev. 1439 (1968).

[14] 19 P.S. § 1057 (1964).

[15] 61 P.S. § 566 (Supp. 1974).

[16] Courts of other states have not been reluctant to strike down legislation that impermissibly discriminated on the basis of sex. E. g., Sail'Er Inn, Inc. v. Kirby, 5 Cal. 3d 1, 485 P.2d 529, 95 Cal.

decision in *Commonwealth v. Daniel*, 430 Pa. 642, 243 A.2d 400 (1968).[17] See also *United States ex rel. Robinson v. York*, 281 F. Supp. 8 (D. Conn. 1968). In *Daniel*, as has been noted, this Court struck down the original Muncy Act's interdiction of maximum sentences for women. In an opinion authored by the late Chief Justice BELL, this Court stated: "[W]e fail to discern any reasonable and justifiable difference or deterrents between men and women which would justify a man being *eligible* for a shorter maximum prison sentence than a woman for the commission of the same crime, especially if there is no material difference in their records and the relevant circumstances." 430 Pa. at 650, 243 A.2d at 404 (emphasis in the original). By a parity of reasoning, the conclusion we reached in *Daniel* holds for sex-based discrimination in eligibility for parole.

The Supreme Court of New Jersey was recently confronted with the identical issue.[18] That court held that

---

Rptr. 329 (1971); *Harrigfeld v. District Court of the 7th Judicial Dist.*, 95 Idaho 540, 511 P.2d 822 (1973); *Commonwealth v. Burke*, 481 S.W.2d 52 (Ky. 1972); *Paterson Tavern & Grill Owners Ass'n, Inc. v. Borough of Hawthorne*, 57 N.J. 180, 185, 270 A.2d 628, 631 (1970) ("the municipal restriction against female bartending may no longer fairly be viewed as a necessary and reasonable exercise of the police power"); *A. v. City of New York*, 31 N.Y.2d 83, 286 N.E.2d 432, 335 N.Y.S.2d 33 (1972) (FULD, C.J.); *Hanson v. Hutt*, 83 Wash. 2d 195, 517 P.2d 599 (1973). See also *Seidenberg v. McSorleys' Old Ale House, Inc.*, 317 F. Supp. 593, 605-06 (S.D.N.Y. 1970) (plaintiffs' motion for summary judgment granted), 308 F. Supp. 1253, 1259-60 (S.D.N.Y. 1969) (defendant's demurrer denied); *Bennett v. Dyer's Chop House, Inc.*, 350 F. Supp. 153 (N.D. Ohio 1972) (42 U.S.C. § 1983 action); *United States ex rel. Robinson v. York*, 281 F. Supp. 8 (D. Conn. 1968); *White v. Crook*, 251 F. Supp. 401, 408-09 (M.D. Ala. 1966) (per curiam).

[17] *Daniel* arose prior to this Commonwealth's adoption on May 18, 1971, of the equal rights amendment. Pa. Const. art. I, § 28.

[18] The New Jersey sentencing scheme struck down in *State v. Chambers*, 63 N.J. 287, 307 A.2d 78 (1973), contained an identical

"the statutory provisions . . . for the sentencing of a female offender to an indeterminate term are unconstitutional in a situation where a male offender convicted of the same offense would be sentenced to State Prison for a minimum-maximum term." *State v. Chambers,* 63 N.J. 287, 294, 307 A.2d 78, 81 (1973) (citation & footnote omitted). See also *State v. Costello,* 59 N.J. 334, 282 A.2d 748 (1971). Using an equal protection analysis, the New Jersey Supreme Court found there was no rational basis to warrant a different sentencing procedure for men than for women.[19]

In other contexts, much has been written about the equal protection clause (especially about its impact on sex discrimination[20]) and many different views of its

provision prohibiting minimum sentences for women. " '[M]ale inmates of the state prison are eligible for parole consideration by the State Parole Board when a certain statutorily designated portion of the sentence has been served. N.J.S.A. 30:4-123.10 and 123.12. (This does not, of course, mean that every inmate will be released on parole when he is first eligible for consideration.) There is no such provision relating to inmates of the women's institution; as to them, as we have said, release and consideration therefor is entirely in the hands of the board of managers without any statutory directions or guidelines.' " Id. at 292, 307 A.2d at 80 (quoting *State v. Costello,* 59 N.J. 334, 342-43, 282 A.2d 748, 753 (1971)).

[19] "The rationale for the classification and the different sentencing procedure—that females are better subjects for rehabilitation, thereby justifying a potentially longer period of detention for that purpose—finds little or no support, empirical or otherwise, in the record. . . .

"Analyzing the proofs, the most that has been shown is that there are differences in the emotional behavior of men and women. However, basically, there are no innate differences in capacity for intellectual achievement, self-perception or self-control, or the ability to change attitude and behavior, adjust to social norms and accept responsibility." *State v. Chambers,* 63 N.J. 287, 296, 307 A.2d 78, 82 (1973) (citations omitted).

[20] Compare *Frontiero v. Richardson,* 411 U.S. 677, 93 S. Ct. 1764 (1973) (plurality opinion) (sex is a "suspect classification"

scope and role propounded.[21]  And although at times the equal protection clause can at best be seen through a glass darkly, one aspect is perceived clearly: if a legislative classification bears no reasonable relationship to the purposes of the legislation, the equal protection clause is offended. E.g., *Reed v. Reed,* 404 U.S. 71, 92 S. Ct. 251 (1971); *F. S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 561-62 (1920); cf. *Stanley v. Illinois,* 405 U.S. 645, 658, 92 S. Ct. 1208, 1216 (1972). Because we have concluded that there is no rational relationship between the sex of a convicted person and the Commonwealth's interest in parole eligibility, the denial of equal protection occasioned by the joint operation of the Act of 1911 and the Muncy Act furnishes an independent basis for our decision.

Having decided that the statutory sentencing scheme is unconstitutional, we conclude that the provision in the new Muncy Act mandating that no woman

requiring judicial "strict scrutiny"); *Stanley v. Illinois,* 405 U.S. 645, 92 S. Ct. 1208 (1972) (due process-equal protection analysis); *Reed v. Reed,* 404 U.S. 71, 92 S. Ct. 251 (1971) (no rational basis found to justify differential treatment on basis of sex); *Sail'Er Inn, Inc. v. Kirby,* 5 Cal. 3d 1, 15-22, 485 P.2d 529, 538-43, 95 Cal. Rptr. 329, 338-43 (1971) (sex as "suspect classification") (dictum), with *Geduldig v. Aiello,* 417 U.S. 484, 94 S. Ct. 2485 (1974); *Kahn v. Shevin,* 416 U.S. 351, 94 S. Ct. 1734 (1974) (rational basis found to uphold different treatment for widows and widowers).  See generally L. Kanowitz, Women and the Law: The Unfinished Revolution (1969); Brown, Emerson, Falk & Freedman, The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women, 80 Yale L.J. 871 (1971); Note, Sex Discrimination and Equal Protection: Do we need a Constitutional Amendment? 84 Harv. L. Rev. 1499 (1971); Developments in the Law—Equal Protection, 82 Harv. L. Rev. 1065 (1969).

[21] See especially *Vlandis v. Kline,* 412 U.S. 441, 455, 93 S. Ct. 2230, 2238 (1973) (WHITE, J., concurring).  See Gunther, The Supreme Court 1971 Term—Foreword: In Search of Evolving Doctrine on a Charging Court: A Model for a Newer Equal Pro-

receive a minimum sentence must fall. Liminally, we note that in *Daniel,* this Court, and in *Chambers,* the New Jersey Supreme Court, when confronted with analogous problems struck down the sentencing statute which made an impermissible exception on the basis of sex from the general sentencing statute. We are further persuaded by weighty constitutional and policy reasons to follow the course charted by these two decisions.

First, because the Act of 1911 applies to "any person," it is neutral on its face. It is the exception of women from the general coverage of "any person" that works an unconstitutional result. Second, our resolve to hold unconstitutional the new Muncy Act is more in harmony with the legislative intent. The history of special sentencing statutes for women demonstrates that they were departures from a more general intent to provide equal sentencing treatment for men and women. Third, were we to invalidate the sentencing provisions of the Act of 1911, no statutory authority would then exist to sentence male offenders. Declaring invalid the new Muncy Act would mean that both men and women could be sentenced pursuant to section 6 of the Act of 1911. 19 P.S. § 1057 (1964).

We therefore hold unconstitutional by reason of Article I, section 28 of the Pennsylvania Constitution and the equal protection clause of the Fourteenth Amendment of the United States Constitution, section 1 of the Act of July 16, 1968, P.L. 349, 61 P.S. § 566. (Supp. 1974), insofar as it requires trial courts not to

tection, 86 Harv. L. Rev. 1 (1972); Developments in the Law— Equal Protection, 82 Harv. L. Rev. 1065 (1969); Tussman & ten-Broek, The Equal Protection of the Laws, 37 Calif. L. Rev. 341 (1949). For a brief review of the available existing equal protection theories, see *McIlvaine v. Pennsylvania State Police,* 454 Pa. 129, 140-48, 309 A.2d 801, 807-11 (1973) (dissenting opinion), appeal dismissed, 415 U.S. 986, 94 S. Ct. 1583 (1974).

fix a minimum sentence when imposing sentence on women convicted of crime.[22]

The general sentencing statute under which appellant was sentenced is on its face completely neutral. It expresses a legislative judgment about sentencing alternatives that applies to "any person," whether male or female. Appellant's judgment of sentence must therefore stand.

Judgment of sentence affirmed.

Mr. Justice EAGEN concurs in the result.

---

[22] In view of the Legislature's intent, 1 Pa.C.S. § 1925 (Special Pamphlet, 1973), and the structure of § 1 of the Act of July 16, 1968, P.L. 349, 61 P.S. § 566 (Supp. 1974), we conclude that the last sentence of 61 P.S. § 566, which prohibits minimum sentences for female offenders, is severable from the rest of § 566. It is certain that the legislative intent to have women convicted of crime be imprisoned at Muncy (where facilities for women exist) is not "essentially and inseparably connected with," but rather is distinct and separate from the question whether those women should serve minimum sentences. Moreover, the valid part of § 566, standing alone, is easily executed in accordance with the legislative intent; this valid portion is independent and complete within itself. See *Commonwealth v. Armao*, 446 Pa. 325, 338, 286 A.2d 626, 632 (1972); *Saulsbury v. Bethlehem Steel Co.*, 413 Pa. 316, 320-21, 196 A.2d 664, 666-67 (1964); *Rieck-McJunkin Dairy Co. v. Milk Control Comm'n*, 341 Pa. 153, 162-63, 18 A.2d 868, 871-72 (1941); *Rutenberg v. Philadelphia*, 329 Pa. 26, 39, 196 A. 73, 79 (1938). See generally 2 J. Sutherland, Statutes and Statutory Construction §§ 44.01-44.20 (4th ed. C. Sands 1973); 2 C. Antieau, Modern Constitutional Law § 15.35 (1969).

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I concur in the decision of the Court. This supplementary comment is added to indicate why I believe that striking down that part of the Muncy Act which proscribes minimum sentences for female offenders is the correct judicial response to the unconstitutional statutory discrimination between male and female of-

fenders with respect to minimum sentences of imprisonment.

As the Court repeatedly observes, it is "the joint operation of the Act of 1911 and the new Muncy Act," rather than any defect peculiar to one or the other of these two statutes, which results in unconstitutional discrimination between male and female offenders. Standing alone, each statute represents a reasonable attempt to deal with the problems of punishment and rehabilitation within our criminal justice system. A legislative choice to apply either approach to all criminal offenders irrespective of sex would be unimpeachable.

I underscore this obvious point solely to emphasize that, in framing a remedy for this impermissible discrimination between male and female offenders, we are not necessarily obliged to restrict ourselves to the Muncy Act. Invalidating the minimum sentence provision of the Act of 1911 would accomplish the same result. Indeed, this is precisely the relief which appellant seeks.

Where the burden of a discriminatory statutory scheme falls exclusively on one identifiable class, the choice of remedies may be obvious. See *Frontiero v. Richardson*, 411 U.S. 677, 36 L.Ed.2d 583 (1973). Here, however, the choice is not so clear, for the effect of the discrimination will vary in accordance with the facts of each case. As the Court points out, the significance of a minimum sentence lies in its relation to an offender's eligibility for parole. In the case of a male offender, the expiration of the minimum sentence marks the beginning of eligibility. On the other hand, at least in theory, female offenders are eligible for parole from the moment their sentences begin to run. Act of August 6, 1941, P.L. 861, §§21, 31, as amended; 61 P.S. §§331.21, 331.31. In practice, however, the Board of Probation and Parole will not consider the case of

a female offender until the expiration of an arbitrary period which, in some cases, may be longer than the minimum sentence which would have been imposed on a male offender in the same circumstances.[1] Thus, while in most cases the burden of discrimination will fall on male prisoners, in some cases it will be female prisoners who will be penalized by the bipartite statutory scheme.

But our present concern is not limited to whether the appellant is better or worse off than a female offender in like circumstances. A party who proves a denial of equal protection of the laws is not necessarily entitled to have statutory lines of classification redrawn for his personal benefit. See *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535 (1942). The choice of remedies must be determined upon a larger view. "Where a statute denies equal protection by making an unconstitutional classification, the classification can be abolished by making the statute operate either on everyone or on no one. . . . Though the test is imprecise, a court must weigh the general interest in retaining the statute against the court's reluctance to extend legislation to those not previously covered. Such an inquiry may lead a court into examination of legislative purpose, the overall statutory scheme, statutory arrangements in connected fields and the needs of the public." Developments in the Law—Equal Protection, 82 Harv. L. Rev. 1065, 1136-37 (1969) (footnote omitted).

The manner of achieving equality of treatment for male and female offenders is, as I see it, dependent upon a determination of legislative intent: had it known that the two statutes could not constitutionally coexist, would the General Assembly have preferred the entire community of offenders, male and female, to receive

---

[1] *See* the dissenting opinion of this writer in *Commonwealth v. Piper,* 458 Pa. 307, 328 A.2d 845 (1974).

minimum sentences or to receive no minimum sentence? For two reasons, I conclude that the former alternative would comport more closely with the legislature's intent. First, as the Court points out, the Act of 1911 is a statute of general applicability, whereas the Muncy Act is limited to female offenders. Second, it is questionable whether, absent radical changes in the state's parole machinery, the system could effectively cope with an administrative (Muncy Act) as opposed to a judicial (Act of 1911) determination of initial parole eligibility. While in the past the relatively small number of women offenders has made feasible the administrative practice under the Muncy Act, the addition of many hundreds of male offenders might well create a chaotic administrative situation.

When a statute, either alone or in conjunction with another statute or statutes, infringes on constitutional rights, this Court has an obligation to make every effort to salvage the statute by an appropriate excision so long as legislative intent will not be frustrated thereby. *See* 1 Pa.C.S. §1925; *State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania*, 441 Pa. 293, 300, 272 A.2d 478, 482 (1971) (concurring and dissenting opinion of this writer); *Saulsbury v. Bethlehem Steel Co.*, 413 Pa. 316, 196 A.2d 664 (1964); *Rieck-McJunkin Dairy Co. v. Milk Control Commission*, 341 Pa. 153, 18 A.2d 868 (1941). In light of what I conceive to be the correct reading of the legislature's intent under the circumstances, such an excision is feasible and proper in this case. Thus I agree that striking the last sentence of the Muncy Act will serve to cure the constitutional infirmity of the total statutory scheme while at the same time reflecting the legislative intent as accurately as it is possible to do on the record before us.[2] If, in performing this bit of judicial surgery, we

---

[2] I do not consider that §1936 of the Statutory Construction Act of 1972, 1 Pa.C.S. §1936, is applicable to this situation. That

have misjudged the legislative intent, new remedial legislation is of course possible.

section provides: "Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail." That section is addressed to facial incompatibility in the provisions of two or more statutes, not to constitutional defects in a statutory scheme which is otherwise internally consistent.